UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MARY & LARRY PATTERSON, ET AL** | **CIVIL ACTION** |
| **VERSUS** | **NO. 08-5014** |
| **DEAN MORRIS, L.L.P., ET AL** | **SECTION "K"(2)** |

## ORDER AND OPINION

Before the Court is the "Motion for Summary Judgment" filed on behalf of defendants Dean Morris, LLP, George B. Dean, Jr., John C. Morris, III, Charles H. Heck, Jr., and Candace A. Coutreau (referred to collectively herein after as "Dean Morris") (Doc.174) seeking to dismiss plaintiff Marlene Aubert's claims against Dean Morris. Having reviewed the pleadings, memoranda, and relevant law, the Court, for the reasons assigned, GRANTS the motion.

BACKGROUND

On November 13, 1998, Marlene Aubert executed a $37,515.00 promissory note payable to AMRESCO Residential Mortgage Corporation ("AMRESCO"). (Doc. 174, Ex. A - Aubert 1). Ms. Aubert secured the promissory note with a mortgage on property located at 2600 Elysian Fields Avenue, New Orleans, Louisiana. (Doc. 174, Ex. A - Aubert 2). Also on November 13, 1998, AMRESCO assigned the note to an unidentified party. (Doc. 174, Ex. A - Aubert 3). Dean Morris represents that AMRESCO assigned the note "to Bank United which merged into and became Washington Mutual Bank, F.A." ("WAMU").[1] (Doc. 174, , Ex. A, Affidavit of George B. Dean, Jr. and John C. Morris, III, ¶ 4).

---

[1] Bank United and WAMU merged on June 18, 2001. (Doc. 174, Ex. A Affidavit of George B. Dean, Jr. and John C. Morris, III, ¶ 9).

On October 27, 2000, Ms. Aubert filed a voluntary petition for bankruptcy under Chapter 13.² (Doc. 174, Ex. A - Aubert 4). The schedules filed in connection with that bankruptcy petition show that Ms. Aubert had four mortgages on the Elysian Fields Avenue property, no "Cash on hand," a checking account with no funds, and $173.71 of monthly "Excess income." (Doc. 174, Ex. A - Aubert 4). The Chapter 13 plan proposed by Ms. Aubert indicated "mortgage arrearages" totaling $4,409.21 and unsecured claims of $4,178.55. (Doc. 174, Ex. A - Aubert 5). On January 8, 2001, the bankruptcy judge approved Ms. Aubert's plan which provided for payment of 100% to all creditors at a rate of $173.71 per month for 58 months which included the following amounts:

| | |
|---|---|
| Past Due Monthly Payments | $1,915.65 |
| Uncollected Late Charges | $ 92.35 |
| Escrow Adv/Shortage | $1,187.13 |
| NSF Fees | $ 54.27 |
| Inspection Fees | $ 29.00 |
| Accrued late Charges | $ 114.69 |

(Doc. 174, Ex. A - Aubert 7). Bank United filed a proof of claim for $3,393.09. (Doc. 174, Ex. A - Aubert 7). On June 18, 2000, the bankruptcy judge signed an order substituting WAMU for Bank United. (Doc. 176, Ex. A - Aubert 9).

When Ms. Aubert failed to make the payments required by her Chapter 13 Plan, Dean Morris, acting on behalf of Bank United, filed a motion for relief from automatic stay which the bankruptcy judge granted on June 1, 2001. (Doc. 174, Ex. A - Aubert 8).³ Thereafter Dean Morris, acting on behalf of WAMU, filed a "Suit on Note with Recognition of Mortgage" in the Civil District Court for the Parish of Orleans. The suit sought a judgment in the amount of "$37,245.19

---

²*In re Marlene Finnie Aubert*, No. 00-16836 (E.D. La.).

³ The bankruptcy judge dismissed Ms. Aubert's bankruptcy for failure to comply with the Chapter 13 plan on November 27, 2001.

2

with interest thereon at the rate of 11.875% per annum from October 1, 2000, together with any amounts advanced by plaintiff for taxes, insurance premiums, assessments, repairs and maintenance of the property, reasonable attorney's fees not to exceed 25% and all cost of these proceedings" in addition to a declaration that the mortgage be declared "enforceable in accordance with the law." (Doc. 174, Ex. A - Aubert 11). Upon filing that petition Dean Morris paid $248.00 to the Clerk of Court and $40.00 to the Civil Sheriff. (Doc. 174, Ex. A - Aubert 12, 13, 14). On January 14, 2002 the state court entered a preliminary default against Ms. Aubert. (Doc. 174, Ex. A - Aubert 16).

After Dean Morris filed the suit, Ms. Aubert sought assistance from Gwen Dixon at the Youth & Adult Enrichment Network, Inc. ("YAENI"). Gwen Dixon requested "reinstatement figures" for Ms. Aubert's loan. (Doc. 174, Ex. A - Aubert 15). On March 13, 2002, Dean Morris issued to YAENI an "Estimated Reinstatement Quote," good through April 12, 2002, which set out the following amounts:

| | |
|---|---|
| Payments Due | $8,365.20 |
| Late Payments | 640.28 |
| Misc. Fees | 82.30 |
| Corporate Advance | 928.10 |
| **Sub Total** | 10,015.88 |
| | |
| Attorney Fees (Current) | $1,000.00 |
| Clerk Fees | 400.00* |
| Sheriff Fees | 80.00* |
| Abstracts | 429.57* |
| Lost Note Ad | 259.47* |
| **Sub Total** (**See Below**)* | 2,169.04 |

**TOTAL DUE GOOD THROUGH APRIL 12, 2002**   $12,184.92

> *Estimates only - costs changes daily - Payoff/reinstatement subject to, and conditioned upon full payments of all accrued court costs, Plaintiff's costs and commissions. If overpaid, excess will be refunded. If underpaid deficiency must be provided to us before reinstatement/payoff will be accepted.

3

(Doc. 174, Ex. A - Aubert 17).

On April 23, 2002, Dean Morris dismissed the pending state court suit, and on April 26, 2002 Dean Morris filed a "Petition for Executory Process" in the Civil District Court for the Parish of Orleans seeking, among other things, a Writ of Seizure and Sale to sell the mortgaged property. (Doc. 174, Ex. A - Aubert 18). Upon filing that petition Dean Morris paid $248.00 to the Clerk of Court and advanced $1,200.00 in costs to the Civil Sheriff. (Doc. 174, Ex. A - Aubert 20, 21). The Writ of Seizure and Sale issued on April 30, 2002. (Doc. 174, Ex. A - Aubert - 19).

On June 21, 2002 Marlene Aubert filed a second voluntary petition for Chapter 13 bankruptcy.[4] (Doc. 174, Ex. A - Aubert 24). Once Dean Morris learned that Ms. Aubert had filed for bankruptcy, it put the foreclosure proceeding on hold. (Doc. 174, Exhibit A - Affidavit of George B. Dean, Jr. and John C. Morris, III, ¶45). On July 30, 2002 Dean Morris received the bill from the Civil Sheriff reflecting total costs of $828.89 and indicating that Dean Morris was entitled to a $371.11 refund. (Doc. 174, Ex. A - Aubert 22). The foreclosure proceeding remained pending.

Ms. Aubert's proposed plan reflected that she was in arrears on each of the four mortgages on the Elysian Fields property. (Doc. 174, Ex. A - Aubert 24). Her amended schedules indicated that she had monthly excess income of $371.05. (Doc. 174, Ex. A - Aubert 26). On August 27, 2002, the bankruptcy judge confirmed a Chapter 13 Plan that provided for payments to secured and unsecured creditors of 100% over 57 months with a monthly payment of $359.00 (Doc. 174, Ex. A - Aubert 25, 27).

On October 15, 2002, WAMU filed a Proof of Claim for $18,117.44 which included the following amounts:

---

[4] *In re Marlene Finney Aubert,* No. 02-14381 (E.D. La.).

|  |  |
|---|---|
| Payments | $12,771.00 |
| Payment Late Charges | $  716.74 |
| Pre-petition Legal Fees | $  900.00 |
| Pre-petition Legal Costs | $ 2,628.90 |
| Additional Charges | $ 1,100.00 |

(Doc. 174, Ex. A - Aubert 26).

On April 24, 2003, approximately eight months after confirmation of the Chapter 13 plan, the Trustee moved to dismiss Ms. Aubert's bankruptcy for failure to comply with her Chapter 13 plan. (Doc. 174, Ex. A - Aubert 29). The bankruptcy judge granted the Trustee's motion on May 27, 2003. (Doc. 174, Ex. A - Aubert 30).

Following the dismissal of the second bankruptcy proceeding, WAMU directed Dean Morris to re-initiate the foreclosure proceeding. (Doc. 174, Ex. A - Affidavit of George B. Dean, Jr. and John C. Morris, III, ¶ 54). In connection with the filing of an amended petition, Dean Morris advanced an additional $75.00 in costs to the Clerk of Court. (Doc. 174, Ex. A - Affidavit of George B. Dean, Jr. and John C. Morris, III, ¶ 58, Aubert 31). The Civil Sheriff scheduled the sale of Ms. Aubert's property for September 11, 2003. (Doc. 174, Ex. A - Aubert 32).

On September 3, 2003, Ms. Aubert filed her third voluntary petition for Chapter 13 bankruptcy relief.[5] (Doc. 174, Ex. A - Aubert 36). On learning of Ms. Aubert's bankruptcy filing, Dean Morris again halted the scheduled sale of the property. Thereafter the Civil Sheriff sent Dean Morris its bill showing costs of $2,622.88. (Doc. 174, Ex. A - Aubert 32).

Ms. Aubert filed schedules stating that she had no "Cash on hand" and no bank accounts. (Doc. 174, Ex. A - Aubert 36). Ms. Aubert's proposed Chapter 13 plan reflected that she had $33,600 in "Total debt and administrative expenses." (Doc. 174, Ex. A - Aubert 34). The plan

---

[5] *In re Marlene Aubert*, No. 03-16758 (E.D. La.).

5

proposed payments of $600.00 per month for 56 months. (Id.). The bankruptcy judge confirmed the plan on October 21, 2003. (Doc. 174, Ex. A - Aubert 35). On November 13, 2003, WAMU filed a Proof of Claim indicating "Total Arrearages" of $28,203.48 representing the following amounts:

| | |
|---|---|
| Payments | $18,609.99 |
| Payment Late Charges | 999.76 |
| Pre-petition Legal Fees | 1,800.00 |
| Pre-petition Legal Costs | 5,122,64 |
| Additional Charges | 1,671.39 |

(Doc. 174, Ex. A - Aubert 33).

On June 2, 2004, WAMU field a "Motion for Relief from Automatic Stay" based on Ms. Aubert's failure to pay the monthly payments due under her plan and her failure to pay her monthly mortgage payment. (Doc. 174, Ex. A - Aubert 37). The bankruptcy judge granted the motion and lifted the stay on July 2, 2004. (Doc. 174, Ex. A- Aubert 38). In December 2004, approximately fourteen (14) months after confirmation of the Chapter 13 plan, on the motion of the Trustee, the bankruptcy judge dismissed the bankruptcy proceeding for failure to comply with the plan. (Doc. 174, Ex. A - Aubert 39, 40).

Following the lifting of the automatic stay, Dean Morris, on behalf of WAMU, re-initiated the foreclosure proceeding and deposited an additional $1,200.00 with the Civil Sheriff's Office. (Doc. 174, Ex. A - Affidavit of George B. Dean, Jr. and John C. Morris, III, ¶ 94, Doc. 174, Ex. A - Aubert 12). On October 14, 2004, the Civil Sheriff sold Ms. Aubert's property for $69,700.00. (Doc. 174, Ex. A - Aubert 42). Following the sale, the Civil Sheriff sent Dean Morris an invoice indicating "Total Costs" of $6,121.68 with an outstanding balance due of $2,298.80. (Id.).

On February 17, 2005, a number plaintiffs, filed a putative class action suit against Dean Morris and various lender defendants alleging a variety of claims in the Civil District Court for the

Parish of Orleans. Mrs. Aubert joined the suit in November 2007. Following two unsuccessful attempts to remove the case to federal court, a defendant successfully removed the suit to this Court in 2008. The petition alleges a class of lender defendants consisting of lenders "who used Dean Morris as their attorney, agent, and/or employee, and for whom or during the representation of whom Dean Morris charged and/or collected excessive fees and/or expenses from members of the Plaintiff Class." *Patterson v. Dean Morris*, No. 08-5014, Fifth Supplemental and Amending Petition for Damages, ¶ IX. The petition further alleges that "Dean Morris, acting as the attorney, agent, and/or employee of all of the Lender Defendants instituted collection and/or foreclosure proceedings against the named plaintiffs . . . for sums alleged to be due under mortgages held by the Lender Defendants[]" and that Dean Morris "overstated to the named plaintiffs and to members of the Plaintiff Class the amount of court costs, sheriff's fees, attorney's fees and/or other expenses, thus impairing the rights of and causing harm to plaintiffs and members of the Plaintiff Class *Id,* at ¶ IX, ¶ XI. Plaintiffs also allege that "[t]he Lender Defendants' obligations under the mortgage and related agreements were non-delegable such that the Lender Defendants are liable for the acts and omissions of their attorney, with respect to these obligations." *Id.* at ¶ XIV. The petition seeks damages under the following causes of action:

- conversion;
- unjust enrichment;
- intentional misrepresentation and fraud;
- negligent misrepresentation;
- breach of contract; and
- civil conspiracy.

While the suit remained pending in state court, the state district judge dismissed plaintiffs' negligence claims against Dean Morris.

Dean Morris now seeks summary judgment on Marlene Aubert's remaining claims.

Summary Judgment Standard

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Stults v. Conoco*, 76 F.3d 651 (5th Cir.1996),  citing  *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 912-13 (5th Cir.), quoting  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986).  When the moving party has carried its burden under Rule 56, its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.  The nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial."  *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986);  *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir.1995).

 "A genuine issue of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " *Pylant v. Hartford Life and Accident Insurance* Company, 497 F.3d 536, 538 (5th Cir. 2007) quoting *Anderson  v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  Summary judgment evidence must be "viewed in the light most favorable to the nonmovant, with all factual inferences made in the nonmovant's favor." *Bazan ex rel Bazan v. Hildago County*, 246 F.3d 481, 489 (5th Cir. 2001), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 255, 106 S.Ct. at 2513.

> [C]onclusory statements, speculation, and unsubstantiated assertions cannot defeat a motion for summary judgment.  The Court has no

> duty to search the record for material fact issues. Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim.

*RSR Corporation v. International Insurance Company*, 612 F.3rd 851,857 (5th Cir. 2010).

Intentional Misrepresentation and Fraud

Because all of the claims alleged by plaintiff assert Louisiana state law claims, the Court applies Louisiana substantive law in analyzing the claims. To establish a claim for intentional misrepresentation a plaintiff must prove: "(1) a misrepresentation of a material fact, (2) made with the intent to deceive, (3) causing justifiable reliance with resulting injury." *Systems Engineering and Security, Inc. v. Science & Engineering Associations, Inc*., 962 So.2d 1089, 1091(La. App. 4th Cir. 2007) (internal quotation and citation omitted). Plaintiff asserts that the reinstatement proposal sent by Dean Morris contained inflated attorneys fees and costs.

Plaintiff has produced no competent summary judgment demonstrating that she relied on the alleged overcharges and sustained damage by relying on those disputed charges. Ms. Aubert has not submitted any evidence suggesting that she made any payment to Dean Morris or Bank United as a result of receiving the disputed reinstatement proposal. Nor has Ms. Aubert offered any evidence establishing that she made any payment to Dean Morris, Bank United or WAMU for the allegedly inflated costs or attorneys fees.

Furthermore, Ms. Aubert submitted no evidence indicating that the amounts listed on the Reinstatement Proposal as attorneys fees and costs had a negative impact on any attempt to reinstate her loan. Nor is there any evidence suggesting that at the time Dean Morris issued the reinstatement proposals that Ms. Aubert had the financial resources to pay even the undisputed outstanding amounts owed on the loan, e.g., the monthly principal and interest and the late fees. In fact, there

is undisputed evidence to the contrary. More than a year before Dean Morris sent Ms. Dixon the disputed reinstatement proposal Ms. Aubert filed for bankruptcy. Based on the schedules filed in connection with that bankruptcy it is readily apparent that Ms. Aubert was financially overextended and had only $173.71 in excess income each month. Plaintiff has not produced any evidence indicating that her financial position improved at any time prior to March 2002 when Dean Morris issued the challenged reinstatement proposal. Absent evidence that the currently disputed portions of the reinstatement proposal were the only impediments to reinstating the loan Ms. Aubert has failed to raise a genuine issue of material fact concerning her reliance on the alleged improper charges and damages sustained due to that reliance with respect to the alleged misrepresentations. Dean Morris is therefore entitled to summary judgment on plaintiff's claim for intentional misrepresentation.

Turning to plaintiff's fraud claim, "[f]raud is a misrepresentation or a suppression of the truth made with the intention to either obtain an unjust advantage for one party or to cause a loss or inconvenience to another. Fraud may also result from silence or inaction." La. Civ. Code art. 1953. An action for fraud requires: "(1) a misrepresentation of material fact; (2) made with the intent to deceive; and (3) causing justifiable reliance with resultant injury." *Gonzales v. Gonzales*, 20 F.3d 557, 563 (La. App. 4th Cir. 2009). Because the elements of fraud are virtually identical to those necessary to establish a claim of intentional misrepresentation, the same reasoning used in analyzing the claim of intentional misrepresentation applies in evaluating the fraud claim. For the reasons stated herein above, the motion for summary judgment on the fraud claim is granted.

### Conversion Claim

"[C]onversion is a tort consisting of wrongfully depriving a person of possession of his

property. The fault may be either the original wrongful acquisition or the subsequent wrongful detention of possession. But, there must be either a wrongful taking or a wrongful detention. " *Oge v. Resolute Insurance Company*, 217 So.2d 738, 740-741 (La. App. 3rd Cir. 1969), citing *Import Sales, Inc. v. Lindeman*, 92 So.2d 574 (1957). Dean Morris acknowledges that Ms. Aubert's bankruptcy counsel sent Dean Morris "some of her monthly bankruptcy payments" which Dean Morris forwarded to WAMU. (Doc. 174-1, p. 3). However, plaintiff has failed to provide any evidence that Ms. Aubert made any payment to Dean Morris, Bank United or WAMU for amounts owed as attorneys fees or foreclosure costs. Moreover, given the total of the arrearages for past payments of principal and interest owed by Ms. Aubert to Bank United and WAMU and the relatively brief period of time between the confirmation of the Chapter 13 plans and the dismissal of the bankruptcy proceedings for failure to comply with the plans, the Court cannot reasonably conclude that any payments made by plaintiff under her plans constituted payments for the disputed attorneys fees and foreclosure costs. Specifically, approximately 8 months elapsed between the confirmation of the second Chapter 13 plan, which provided for payments of $359.00, and the dismissal of the bankruptcy for failure to comply with the plan. Even if Ms. Aubert had made all of the required monthly payments, she would have paid at most a total of $2,872.00, far less than the $12,771.00 in late payments claimed by WAMU in its proof of claim filed in that bankruptcy. As for the third Chapter 11 proceeding, approximately fourteen (14) months elapsed between confirmation of the plan that called for monthly payments of $600.00 and the dismissal of the bankruptcy for failure to comply with that plan. Even if Ms. Aubert had made her monthly payment in full each month she would have paid only $8,400.00, less than one-half of the undisputed $18,609.99 claimed by WAMU as late monthly payments in its proof of claim for that proceeding.

Given the lack of evidence that Ms. Aubert paid any allegedly inflated foreclosure costs or attorneys fees, she has failed to raise a genuine issue of material fact concerning whether Dean Morris wrongfully deprived her of any property. Therefore, Dean Morris is entitled to summary judgment on plaintiff's conversion claim.

### Unjust Enrichment

Article 2298 of the Louisiana Civil Code provides, in pertinent part, that:

> A person who has been enriched without cause at the expense of another person is bound to compensate that person. . . . The remedy declared here is subsidiary and shall not be available if the law provides another remedy for the impoverishment or declares a contrary rule.

The requisite elements of a claim for unjust enrichment are: (1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and the impoverishment, (4) an absence of justification or cause for the enrichment and impoverishment, and (5) no other available remedy at law. *Baker v. Maclay Props. Co.*, 648 So.2d 888, 897 (La. 1995). "The unjust enrichment remedy is 'only applicable to fill a gap in the law where no express remedy is provided.'" *Walters v. MedSouth Record Management, LLC*, 38 So. 3rd 243, 244 (La. 2010), quoting *Mouton v. State*, 525 So.2d 1136, 1142 (La. App. 1st Cir. 1988).

Dean Morris moves for summary judgment on this claim urging that because plaintiff has other remedies available to her, she cannot state a claim for unjust enrichment. Defendant's contention is well founded. Other remedies are, in fact, available to plaintiff, e.g., intentional misrepresentation. In *Walters v. MedSouth Record Management, LLC* the Louisiana Supreme Court concluded that because plaintiff had pleaded a delictual action, plaintiff was "precluded from seeking to recover under unjust enrichment." *Id.* The Court further opined, "[m]oreover, we find

12

it of no moment that plaintiff's tort claims have been held to be prescribed.  The mere fact that a plaintiff does not successfully pursue another available remedy does not give the plaintiff the right to recover under the theory of unjust enrichment." *Id.*   Similarly, "the existence of a claim on an express or implied contract precludes application of *actio de in rem verso*, for there does not exist one of the latter's requirements, that there be no other remedy  available at law (subidiarity)." *Morphy, Makofsky, & Masson, Inc. v. Canal Place 2000*, 538 So.2d 569, 572 (La. 1989).  That Ms. Aubert failed to prevail on the other remedies available to her does not negate the fact that such remedies were available.  The availability of an alternative remedy bars Ms. Aubert's  claim for unjust enrichment and entitles Dean Morris to summary judgment on her claim of unjust enrichment.

## Civil Conspiracy

Dean Morris's motion does not specifically seek dismissal of the claim for civil conspiracy. However, because Dean Morris sought to dismiss this claim as to all of the other *Patterson* plaintiffs, the Court concludes that the failure to seek dismissal of Ms. Aubert's civil conspiracy claim resulted from mere oversight, and in the interests of judicial economy, the Court will analyze the civil conspiracy claim.

Article 2324A of the Louisiana Civil Code  provides that "[h]e who conspires with another person to commit an intentional or willful act is answerable *in solido*, with that person, for the damage caused by such act."  However, it is well recognized that Article 2324 does not itself "impose liability for a civil conspiracy." *Ross v. Conoco, Inc.*, 828 So.2d 546, 552 (La. 2002). Rather, "[t]he actionable element in a claim under [Article 2324] is not the conspiracy itself, but rather the tort which the conspirators agreed to perpetuate and which they commit in whole or in part." *Id.* (internal quotation and citation omitted).

13

As noted herein above, Ms. Aubert has failed to establish a genuine issue of material fact with respect to a tort claim against Dean Morris. Because Dean Morris is entitled to summary judgment on all of plaintiff's underlying tort claims, there can be no predicate tort claim for plaintiff's civil conspiracy claim. Therefore, Dean Morris is also entitled to summary judgment on the civil conspiracy claim.

Moreover, even assuming *arguendo* that had raised a genuine issue of material fact with respect to a predicate tort offense, Dean Morris would nonetheless still be entitled to summary judgment on this claim. To establish a conspiracy, plaintiff must produce evidence of an agreement between the parties. *Legier and Matherne, APAC v. Great Plains Software, Inc.*, 2005 WL 1431666, *8 (E.D. La. May 31, 2005).

> Article 2324(A) requires a meeting of the minds or collusion between the parties for the purpose of committing wrongdoing. Evidence of such a conspiracy can be by actual knowledge of both parties or over actions with one another, or that can be inferred from the knowledge of the alleged co-conspirator of the impropriety of the actions taken by the other co-conspirator.

*Id.* (internal quotation and citation omitted). Plaintiff does not offer any specific evidence to establish the requisite agreement to commit a tort. In the absence of evidence of an agreement to commit an underlying tort, Dean Morris is entitled to summary judgment on this claim.

### Breach of Contract

The petition alleges that "Dean Morris' actions on behalf of the Lender Defendants violated provisions of the mortgage and related agreements between plaintiffs and the Lender Defendants." *Patterson v. Dean Morris*, Fifth Supplemental and Amending Petition for Damages, ¶ XIV. Under Louisiana law, "[t]o assert a cause of action for breach of contract, the [plaintiff] must prove both the existence of a contract and privity." *Terrebonne Parish School Board v. Mobil Oil Corporation*,

310 F.3d 870, 888 (5th Cir. 2002).

Dean Morris contends that the claim must fail because there is no contract between Dean Morris and Ms. Aubert. Plaintiff claims that the "[c]ontracts between Dean Morris and the lenders, and the applicable regulations, provide for an 'allowable' attorney fee for a full foreclosure proceeding." (Doc. 231, p. 6). Plaintiff further contends that she "and other putative class members are third party beneficiaries of the 'allowable' limitation on attorney's fees imposed by regulation and incorporated into contracts to which plaintiffs are third- part beneficiaries" (Doc. 231, p. 6).

Under Louisiana law, "[a] contracting party may stipulate a benefit for a third person called a third party beneficiary." La. Civ. Code art. 1978. Because the Civil Code does not specify the analytical framework for determining when a contract contains a stipulation *pour autrui*, the requisite criteria have been jurisprudentially developed. *Williams v. Certain Underwriters at Lloyd's of London*, 2010 WL 4009818, *2 (5th Cir. October 13, 2010). Here, no analysis of the individual criteria is required. Plaintiff has not submitted into evidence a copy of the contract between Dean Morris and Bank United/WAMU, and therefore the Court is unable to determine whether that contract includes a stipulation *pour autrui* in favor of borrowers such as Ms. Aubert. Moreover, even assuming *arguendo* that plaintiff is a third party beneficiary under a contract between Dean Morris and Bank United/WAMU, Dean Morris is entitled to summary judgment on plaintiff's claim for breach of contract. Counsel for plaintiff does not indicate what the "allowable" amount is; however, with respect to other plaintiffs, counsel has asserted that the "allowable" is $900.00. Plaintiff has not offered any evidence that Dean Morris received more than $900.00 in attorneys fees for the foreclosure proceeding. Absent evidence of the contract relied upon and that Dean Morris received more than the "allowable" attorneys fee for the foreclosure proceeding,

plaintiff cannot raise a genuine issue of material fact on this claim for breach of contract.

Plaintiff also alleges that she had a right under the terms of her mortgage to reinstate a delinquent loan, and that Dean Morris, by inflating and thereby misrepresenting the amount of attorney's fees and costs which had to be paid to bring the loan current, deprived her of the right to reinstate her loan. Dean Morris is entitled to summary judgment on this claim as well. As noted herein above, plaintiff has not submitted any competent summary judgment evidence that absent the alleged misrepresentations by Dean Morris, she would have had the financial resources to reinstate her loan and mortgage. Absent such evidence, plaintiff cannot raise a genuine issue of material fact on her breach of contract claim that Dean Morris's alleged misrepresentations deprived her of her right to reinstate her loan. Accordingly, the Court grants Dean Morris's motion for summary judgment and dismisses plaintiff's breach of contract claims. Accordingly,

**IT IS ORDERED** that all claims of plaintiff Marlene Aubert against defendants Dean Morris, LLP, George B. Dean, Jr., John C. Morris, III, Charles H. Heck, Jr., and Candace A. Coutreau are dismissed.[6]

New Orleans, Louisiana, this 6th day of May, 2011.

---

[6] In moving for summary judgment Dean Morris also relied upon the affirmative defenses of voluntary payment and res judicata. Having concluded for the reasons state herein above that Dean Morris is entitled to summary judgment on all of plaintiff's claims, the Court need not address those affirmative defenses.

_____
STANWOOD R. DUVAL, JR.
UNITED STATES DISTRICT JUDGE

17