UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**MARY & LARRY PATTERSON, ET AL**         **CIVIL ACTION**

**VERSUS**                                **NO. 08-5014**

**DEAN MORRIS, L.L.P., ET AL**            **SECTION "K"(2)**

## ORDER AND OPINION

Before the Court is the "Motion for Summary Judgment" filed on behalf of defendants Dean Morris, LLP, George B. Dean, Jr., John C. Morris, III, Charles H. Heck, Jr., and Candace A. Coutreau (referred to collectively herein after as "Dean Morris") (Doc. 202) seeking to dismiss all claims of plaintiff Alex Hartley against Dean Morris. Having reviewed the pleadings, memoranda, and relevant law, the Court, for the reasons assigned, GRANTS the motion.

BACKGROUND

On October 27, 1988, Alex Hartley executed a $43,077.00 promissory note payable to Liberty Bank & Trust Company Mortgage Division ("Liberty"). (Doc. 202, Ex. A - Hartley 1). Mr. Hartley secured the promissory note with a mortgage on property located at 217 North Miro Street, New Orleans, Louisiana. (Doc. 202, Ex. A - Hartley 4). Liberty assigned the mortgage to Countrywide Funding Corporation which in turn assigned the mortgage to Mortgage Electronic Registration Systems, Inc. ( "MER"). (Doc. 202, Ex. A - Hartley 2, 3). Aurora Loan Services ("Aurora") serviced the loan.

On November 27, 2002 Alex Hartley filed a voluntary petition for Chapter 7 bankruptcy.[1] (Doc. 202, Ex. A - Hartley 5). The schedules filed in that bankruptcy reflected assets of $120,310.00

---

[1] *In re Alex Hartley,* No. 02-18787 (E.D. La.)

and $78,808.88 in liabilities. (Doc. 202, Ex. A - Hartley 6). The schedules showed a first lien of $36,000.00 on the Miro Street property in favor of Aurora as well as a second lien of $28,000.00 on the property in favor of Ocwen. (Id.). The schedules also represented that Mr. Hartley had a net monthly income of $1,927.16 and monthly expenses of $3,704.00. (Id.) Mr. Hartley stated that he had no "Cash on hand" and $25.00 in his checking and savings accounts. (Id.).

The Chapter 7 Trustee disclaimed and abandoned all rights in Mr. Hartley's estate concluding that "there is no equity in the [] described property for the estate . . . over and above such exemptions as may apply thereto, or that if there is any such equity, it is not sufficient to justify administration." (Doc. 202, Ex. A - Hartley 7). On January 22, 2003 the bankruptcy judge authorized the Trustee's abandonment of the described estate property. (Doc. 202, Ex. A - Hartley 8). On March 24, 2003, the bankruptcy judge discharged Mr. Hartley. (Doc. 202, Ex. A - Hartley 9).

Thereafter Mr. Hartley defaulted on his monthly first mortgage payments to MER. On October 17, 2003, Aurora referred Mr. Hartley's file to Dean Morris to institute foreclosure proceedings. (Doc. 202, Ex. A, Affidavit of George B. Dean, Jr. and John C. Morris, III, ¶ 9). Dean Morris, acting on behalf of MER, filed a "Petition for Executory Process" in the Civil District Court for the Parish of Orleans, seeking, among other things, a writ of seizure and sale to sell the mortgaged property. (Doc. 202, Ex. A - Hartley11). Upon filing the petition for executory process, Dean Morris paid $306.00 to the Clerk of Court and advanced $1,200.00 in costs to the Civil Sheriff. (Doc. 202, Ex. A - Hartley 13). The state court judge ordered that a Writ of Seizure and Sale issue. (Doc. 202, Ex. A - Hartley 12). In December 2003, Dean Morris paid the Clerk of Court an additional $350.00. (Doc. 202, Ex. A - Hartley 14).

In late 2003, Alex Hartley authorized Gwen Jackson of the Youth and Adult Enrichment Network, Inc. ("YAENI") to request a reinstatement quote on his loan with MER. (Doc. 202, Ex. A - Hartley 15). On December 29, 2003, Dean Morris, L.L.P. provided Ms. Dixon with a "Reinstatement Proposal," good through January 14, 2004, which reflected the following figures:

| | |
|---|---:|
| Payments Due | 3,982.99 |
| Late Charges | 144.86 |
| Property Preservation | 104.40 |
| Foreclosure Attorney's Fees and Costs | 3,482.97 |
| Total | 7,715.22 |

(Doc. 202, Exhibit A - Hartley 15).

The Civil Sheriff scheduled the sale of Mr. Hartley's property for March 11, 2004; however, an issue arose which required rescheduling for the sale. (Doc. 202, Exhibit A - Affidavit of George B. Dean, Jr. and John C. Morris, III, ¶12ss). After the sale was rescheduled for May 27, 2004, Dean Morris forwarded the Civil Sheriff an additional $1,200.00 for costs. (Doc. 202, Ex. A - Hartley 19).

Mr. Hartley proved unable to reinstate his loan. On April 15, 2004 he filed a voluntary petition for Chapter 13 bankruptcy protection.[2] (Doc. 202, Ex. A - Hartley 20). Thereafter Dean Morris monitored the bankruptcy proceedings at the request of Aurora. (Doc. 202, Ex. A, Affidavit of George B. Dean, Jr. and John C. Morris, III, ¶ 21). Once Dean Morris learned that Mr. Hartley had filed for bankruptcy, it put the foreclosure proceeding on hold and cancelled the property sale. On May 5, 2004 the Civil Sheriff sent Dean Morris a bill reflecting total costs of $1,548.80 and indicating that Dean Morris was entitled to a $851.20 refund. (Doc. 202, Ex. A - Hartley 21). The Civil Sheriff refunded the overpayment to Dean Morris. (Doc. 202, Exhibit A - Affidavit of George B. Dean, Jr. and John C. Morris, III, ¶ 16). The foreclosure proceeding remained pending.

---

[2] *In re Alex Hartley*, No. 04-12752 (E.D. La.).

Thereafter Dean Morris billed Aurora and then Aurora paid Dean Morris $2,653.47 which Dean Morris credited, along with the $851.20 refund[3] from the Civil Sheriff, as follows:

| | |
|---|---:|
| Sheriff | $2,400.00 |
| Clerk of Court | $ 656.00 |
| Outsourcer Funds | $ 125.00 |
| Title Search/Review/Subtract | $ 542.00 |
| Curator Costs | $ 154.26 |
| Technology Fee/Lenstar | $ 20.00 |
| Total Attorneys' Fee | ($ 392.59) |

(Doc. 202, Ex. A, Affidavit of Charles George B. Dean, Jr. and John C. Morris, III, ¶ 16).

Mr. Hartley filed bankruptcy schedules indicating that he had $20.00 "Cash on hand" and $25.00 in a credit union account. He identified Aurora as a creditor holding a secured claim for $58,000.00 and indicated that he had "mortgage arrears" on his residence in the amount of $8,500.00. (Doc. 202, Ex. A - Hartley 22). Mr. Hartley stated an intent to pay 100% of the arrears amount over fifty four (54) months at the rate of $157.41 per month. (Doc. 202, Ex. A - Hartley 22). Mr. Hartley also reported Ocwen Federal Bank as a creditor holding mortgage on the N. Miro Street property and stated that there was a mortgage arrearage due Ocwen of $3,500.00 which he intended to pay in full over fifty four (54) months at a rate of $64.81 per month. (Id.). Mr. Hartley incorporated the amounts for Aurora and Ocwen into his Chapter 13 Plan which provided for a total monthly payment of $292.84 for fifty four (54) months. (Doc. 202, Ex. A - Hartley 24). The schedules indicated that Mr. Hartley had income of $2,102.70 per month and expenses of $1,789.00 per month resulting in $313.70 in "Excess Income" per month. (Id.).

The bankruptcy judge confirmed Mr. Hartley's plan on June 15, 2004 (Doc.202, Ex. A -

---

[3] The total amount credited was $3,504.67.

Hartley 25). Aurora filed a Proof of Claim indicating a pre-petition arrearage of $8,727.62 which included the following:

| | |
|---|---|
| Payments | $ 5,743.00 |
| Payment Late Charges | $    208.73 |
| Additional Late Charges | $        8.02 |
| Escrow Shortages | $        0.00 |
| Pre-petition Legal Fees | $    675.00 |
| Pre-petition Legal Costs | $ 1,978.47 |
| Additional charges | $    116.40 |
| Suspense Balance (Subtracted) | $        0.00 |
| Total Arrearages: | $ 8,727.62 |

(Doc. 202, Ex. A - Hartley 26). The Proof of Claim also reflected a "Total Secured Debt" of $43,064.99. (Id.). Mr. Hartley did not object to Aurora's proof of claim. On October 21, 2004, the Chapter 13 Trustee filed a "Notice of Intent to Pay Claims including the claim for mortgage arrearages to Aurora totaling $8,727.62 which included pre-petition legal fees and legal costs. (Doc. 202, Ex. A - Brown Ex. 27).

When Mr. Hartley proved unable to maintain the payments under his confirmed plan, the Trustee filed a "Motion to Dismiss Case or Compel Compliance" (Doc. 202, Ex. A - Hartley 28). The bankruptcy judge dismissed Mr. Hartley's bankruptcy on March 27, 2006 for noncompliance and ordered that the stay pursuant to 11 U.S.C. §362 be vacated and set aside. (Doc. 202, Ex. A - Hartley 29).

On March 30, 2006, Aurora directed Dean Morris to proceed with the foreclosure proceeding. However, on April 3, 2006, Aurora advised Dean Morris to put the foreclosure proceeding on hold.

The Trustee filed his Final Report and Account documenting that Mr. Hartley paid $2,157.55 in "Principal" to Aurora during the bankruptcy proceeding. (Doc. 202, Ex. A - Hartley 30). That

amount is significantly less than the 5,743.00 in past due payments shown on Aurora's undisputed Proof of Claim. The bankruptcy judge approved the Trustee's Final Report and Account on June 6, 2006. (Doc. 202, Ex. A - Hartley 31).

The record indicates that Hurricane Katrina "destroyed" Mr. Hartley's home, and that "Aurora received insurance proceeds in the amount of $56,428.04 as a result of insurance Aurora had obtained due to Hartley's failure to maintain homeowner's insurance with the preferred insurance carrier of his choice." (Doc. 206, Ex. D. - Affidavit of Miralee Vasquez in Regard to Alex Hartley, ¶ 6). Ms. Vasquez's affidavit also states that "[i]n August 2006, Aurora forwarded Hartley a check in the amount of $14,137.72 representing insurance proceeds from the policy placed by Aurora in excess of the amount of principal, interest, fees and expenses owed Aurora under the loan." (Id. at ¶ 7).

On August 8, 2006, Aurora advised Dean Morris that it had received a payoff on the loan and instructed Dean Morris to close its file. (Doc. 202, Ex. A, Affidavit of Charles George B. Dean, Jr. and John C. Morris, III, ¶31). The Civil Sheriff's final bill indicates a "payoff" of the loan of $44,816.92[4] and reflects total costs of $3,758.48. (Doc. 202, Ex. A - Hartley 38).

On October 13, 2006, the bankruptcy judge dismissed Mr. Hartley's bankruptcy. (Doc. 202, Ex. A - Hartley 34). Following the dismissal of the bankruptcy, Dean Morris billed Aurora for work in connection with monitoring the bankruptcy and received a payment of $275.00 which Dean Morris credited as $200.00 for attorneys fees and $75.00 for "outsourcer funds." (Doc. 202, Ex. A, Affidavit of George B. Dean, Jr. and John C. Morris, III, ¶ 26). Dean Morris never received any

---

[4] No explanation is offered for the difference between the payoff amount reported by Aurora and that represented by the Civil Sheriff.

6

direct payment from Mr. Hartley. (Doc. 202, Ex. A, Affidavit of Charles George B. Dean, Jr. and John C. Morris, III,  ¶31).

On February 17, 2005, while both the bankruptcy and foreclosure proceedings remained pending, Alex Hartley, as well as a number of other plaintiffs, filed a putative class action suit against Dean Morris and various lender defendants alleging a variety of claims in the Civil District Court for the Parish of Orleans. Following two unsuccessful attempts to remove the case to federal court, a defendant successfully removed the suit to this Court in 2008. The petition alleges a class of lender defendants consisting of lenders "who used Dean Morris as their attorney, agent, and/or employee, and for whom or during the representation of whom Dean Morris charged and/or collected excessive fees and/or expenses from members of the Plaintiff Class." *Patterson v. Dean Morris*, No. 08-5014, Fifth Supplemental and Amending Petition for Damages, ¶ IX. The petition further alleges that "Dean Morris, acting as the attorney, agent, and/or employee of all of the Lender Defendants instituted collection and/or foreclosure proceedings against the named plaintiffs . . . for sums alleged to be due under mortgages held by the Lender Defendants[]" and that Dean Morris "overstated to the named plaintiffs and to members of the Plaintiff Class the amount of court costs, sheriff's fees, attorney's fees and/or other expenses, thus impairing the rights of and causing harm to plaintiffs and members of the Plaintiff Class *Id,* at ¶ IX, ¶ XI. Plaintiffs also allege that "[t]he Lender Defendants' obligations under the mortgage and related agreements were non-delegable such that the Lender Defendants are liable for the acts and omissions of their attorney, with respect to these obligations." *Id.* at ¶ XIV. The petition seeks damages under the following causes of action:

- conversion;
- unjust enrichment;
- intentional misrepresentation and fraud;
- negligent misrepresentation;

- breach of contract; and
- civil conspiracy.

While the suit remained pending in state court, the state district judge dismissed plaintiffs' negligence claims against Dean Morris.  Dean Morris now seeks summary judgment on all of Alex Hartley's remaining claims.

## Summary Judgment Standard

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Stults v. Conoco*, 76 F.3d 651 (5th Cir.1996),  citing  *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 912-13 (5th Cir.), quoting  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986).  When the moving party has carried its burden under Rule 56, its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.  The nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial."  *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986);  *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir.1995).

 "A genuine issue of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " *Pylant v. Hartford Life and Accident Insurance* Company, 497 F.3d 536, 538 (5th Cir. 2007) quoting *Anderson  v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  Summary judgment evidence must be "viewed in the light most

favorable to the nonmovant, with all factual inferences made in the nonmovant's favor." *Bazan ex rel Bazan v. Hildago County*, 246 F.3d 481, 489 (5th Cir. 2001), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 255, 106 S.Ct. at 2513.

> [C]onclusory statements, speculation, and unsubstantiated assertions cannot defeat a motion for summary judgment. The Court has no duty to search the record for material fact issues. Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim.

*RSR Corporation v. International Insurance Company*, 612 F.3rd 851,857 (5th Cir. 2010).

Intentional Misrepresentation and Fraud

Because all of the claims alleged by plaintiff assert Louisiana state law claims, the Court applies Louisiana substantive law in analyzing the claims. To establish a claim for intentional misrepresentation a plaintiff must prove: "(1) a misrepresentation of a material fact, (2) made with the intent to deceive, (3) causing justifiable reliance with resulting injury." *Systems Engineering and Security, Inc. v. Science & Engineering Associates, Inc*., 962 So.2d 1089, 1091(La. App. 4th Cir. 2007) (internal quotation and citation omitted). Plaintiff asserts that the reinstatement proposal sent by Dean Morris to Gwen Dixon included inflated attorneys fees and costs.

Plaintiff has produced no competent summary judgment demonstrating that he relied on the alleged overcharges and sustained damage by relying on those disputed charges. Mr. Hartley has not submitted any evidence indicating that the amounts listed on the Reinstatement Proposal as attorneys fees and costs had a negative impact on his attempt to reinstate his loan. Nor is there any evidence suggesting that Mr. Hartley had the financial resources to pay even the undisputed outstanding amounts owed on the loan, e.g., the monthly principal and interest and the late fees. Absent evidence that the currently disputed portions of the reinstatement proposal were the only

impediments to reinstating the loan, Mr. Hartley has failed to raise a genuine issue of material fact concerning his reliance on the alleged improper charges and damages sustained due to that reliance with respect to the alleged misrepresentations. Dean Morris is therefore entitled to summary judgment on plaintiff's claim for intentional misrepresentation.

Turning to plaintiff's fraud claim, "[f]raud is a misrepresentation or a suppression of the truth made with the intention to either obtain an unjust advantage for one party or to cause a loss or inconvenience to another. Fraud may also result from silence or inaction." La. Civ. Code art. 1953. An action for fraud requires: "(1) a misrepresentation of material fact; (2) made with the intent to deceive; and (3) causing justifiable reliance with resultant injury." *Gonzales v. Gonzales*, 20 F.3d 557, 563 (La. App. 4th Cir. 2009). Because the elements of fraud are virtually identical to those necessary to establish a claim of intentional misrepresentation, the same reasoning used in analyzing the claim of intentional misrepresentation applies in evaluating the fraud claim. For the reasons stated herein above, the motion for summary judgment on the fraud claim is granted.

## Conversion Claim

"[C]onversion is a tort consisting of wrongfully depriving a person of possession of his property. The fault may be either the original wrongful acquisition or the subsequent wrongful detention of possession. But, there must be either a wrongful taking or a wrongful detention. " *Oge v. Resolute Insurance Company*, 217 So.2d 738, 740-741 (La. App. 3rd Cir. 1969), citing *Import Sales, Inc. v. Lindeman*, 92 So.2d 574 (1957). There is no evidence that Mr. Hartley paid Dean Morris any money. Nor is there any evidence that Mr. Hartley made any payment on his arrearage to Aurora which was then used to fund Aurora's payment of Dean Morris's bill. Considering that lack of evidence, Mr. Hartley has failed to raise a genuine issue of material fact concerning whether

Dean Morris wrongfully deprived him of any property. Therefore, Dean Morris is entitled to summary judgment on plaintiff's conversion claim.

### Unjust Enrichment

Article 2298 of the Louisiana Civil Code provides, in pertinent part, that:

> A person who has been enriched without cause at the expense of another person is bound to compensate that person. . . . The remedy declared here is subsidiary and shall not be available if the law provides another remedy for the impoverishment or declares a contrary rule.

The requisite elements of a claim for unjust enrichment are: (1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and the impoverishment, (4) an absence of justification or cause for the enrichment and impoverishment, and (5) no other available remedy at law. *Baker v. Maclay Props. Co.*, 648 So.2d 888, 897 (La. 1995). "The unjust enrichment remedy is 'only applicable to fill a gap in the law where no express remedy is provided.'" *Walters v. MedSouth Record Management, LLC*, 38 So. 3rd 243, 244 (La. 2010), quoting *Mouton v. State*, 525 So.2d 1136, 1142 (La. App. 1st Cir. 1988).

Dean Morris moves for summary judgment on this claim urging that because plaintiff has other remedies available to him, he cannot state a claim for unjust enrichment. Defendant's contention is well founded. Other remedies are, in fact, available to plaintiff, e.g., intentional misrepresentation. In *Walters v. MedSouth Record Management, LLC* the Louisiana Supreme Court concluded that because plaintiff had pleaded a delictual action, plaintiff was "precluded from seeking to recover under unjust enrichment." *Id.* The Court further opined, "[m]oreover, we find it of no moment that plaintiff's tort claims have been held to be prescribed. The mere fact that a plaintiff does not successfully pursue another available remedy does not give the plaintiff the right

11

to recover under the theory of unjust enrichment." *Id.* Similarly, "the existence of a claim on an express or implied contract precludes application of *actio de in rem verso*, for there does not exist one of the latter's requirements, that there be no other remedy available at law (subidiarity)." *Morphy, Makofsky, & Masson, Inc. v. Canal Place 2000*, 538 So.2d 569, 572 (La. 1989). That Mr. Hartley failed to prevail on the other remedies available to him does not negate the fact that such remedies were available. The availability of an alternative remedy bars Mr. Hartley's claim for unjust enrichment and entitles Dean Morris to summary judgment on his claim of unjust enrichment.

### Civil Conspiracy

Article 2324A of the Louisiana Civil Code provides that "[h]e who conspires with another person to commit an intentional or willful act is answerable *in solido*, with that person, for the damage caused by such act." However, it is well recognized that Article 2324 does not itself "impose liability for a civil conspiracy." *Ross v. Conoco, Inc.*, 828 So.2d 546, 552 (La. 2002). Rather, "[t]he actionable element in a claim under [Article 2324] is not the conspiracy itself, but rather the tort which the conspirators agreed to perpetuate and which they commit in whole or in part." *Id.* (internal quotation and citation omitted).

As noted herein above, Mr. Hartley has failed to establish a genuine issue of material fact with respect to a tort claim against Dean Morris. Because Dean Morris is entitled to summary judgment on all of plaintiff's underlying tort claims, there can be no predicate tort claim for plaintiff's civil conspiracy claim. Therefore, Dean Morris is also entitled to summary judgment on the civil conspiracy claim.

Moreover, even assuming *arguendo* that Mr. Hartley had raised a genuine issue of material fact with respect to a predicate tort offense, Dean Morris would nonetheless still be entitled to

12

summary judgment on this claim. To establish a conspiracy, plaintiff must produce evidence of an agreement between the parties. *Legier and Matherne, APAC v. Great Plains Software, Inc*., 2005 WL 1431666, *8 (E.D. La. May 31, 2005).

> Article 2324(A) requires a meeting of the minds or collusion between the parties for the purpose of committing wrongdoing. Evidence of such a conspiracy can be by actual knowledge of both parties or over actions with one another, or that can be inferred from the knowledge of the alleged co-conspirator of the impropriety of the actions taken by the other co-conspirator.

*Id.* (internal quotation and citation omitted). Plaintiff does not offer any specific evidence to establish the requisite agreement to commit a tort. In the absence of evidence of an agreement to commit an underlying tort, Dean Morris is entitled to summary judgment on this claim.

### Breach of Contract

The petition alleges that "Dean Morris' actions on behalf of the Lender Defendants violated provisions of the mortgage and related agreements between plaintiffs and the Lender Defendants." *Patterson v. Dean Morris*, Fifth Supplemental and Amending Petition for Damages, ¶ XIV. Under Louisiana law, "[t]o assert a cause of action for breach of contract, the [plaintiff] must prove both the existence of a contract and privity." *Terrebonne Parish School Board v. Mobil Oil Corporation*, 310 F.3d 870, 888 (5th Cir. 2002).

Dean Morris contends that the claim must fail because there is no contract between Dean Morris and Mr. Hartley. Plaintiff claims that the "contract between Dean Morris and Aurora, and the applicable regulations, provide for an 'allowable' attorney fee for full foreclosure." (Doc. 234, p. 9). Plaintiff further contends that he "and other putative class members are third party beneficiaries of the 'allowable' limitation on attorney's fees imposed by regulation and incorporated into contracts to which plaintiffs are third-party beneficiaries." (Doc. 232, p. 8).

Under Louisiana law, "[a] contracting party may stipulate a benefit for a third person called a third party beneficiary." La. Civ. Code art. 1978. Because the Civil Code does not specify the analytical framework for determining when a contract contains a stipulation *pour autrui*, the requisite criteria have been jurisprudentially developed. *Williams v. Certain Underwriters at Lloyd's of London*, 2010 WL 4009818, *2 (5th Cir. October 13, 2010). Here, no analysis of the individual criteria is required. Plaintiff has not submitted into evidence a copy of the contract between Dean Morris and Aurora; therefore the Court is unable to determine whether that contract includes a stipulation *pour autrui* in favor of borrowers such as Mr. Hartley. Moreover, even assuming *arguendo* that plaintiff is a third party beneficiary under a contract between Dean Morris and Aurora, Dean Morris is entitled to summary judgment on plaintiff's claim for breach of contract. Although plaintiff's opposition to Dean Morris's motion does not indicate the amount of the alleged "allowable" limitation, with respect to other plaintiffs in this litigation, counsel for plaintiff has represented that the "allowable" amount is $900.00. Plaintiff has not offered any evidence that Dean Morris received more than $900.00 in attorneys fees for the foreclosure proceeding. Absent evidence of the contract relied upon and that Dean Morris received more than the "allowable" attorneys fee for the foreclosure proceeding, plaintiff cannot raise a genuine issue of material fact on this claim for breach of contract.

Plaintiff also alleges that he had a right under the terms of his mortgage to reinstate a delinquent loan, and that Dean Morris, by inflating and thereby misrepresenting the amount of attorney's fees and costs which had to be paid to bring the loan current, deprived him of the right to reinstate his loan. Dean Morris is entitled to summary judgment on this claim as well. Plaintiff has not submitted any competent summary judgment evidence that absent the alleged

14

misrepresentations by Dean Morris, he would have had the financial resources to reinstate his loan and mortgage. Absent such evidence, plaintiff cannot raise a genuine issue of material fact on his breach of contract claim that Dean Morris's alleged misrepresentations deprived him of his right to reinstate his loan. Accordingly, the Court grants Dean Morris's motion for summary judgment and dismisses plaintiff's breach of contract claims. Accordingly,

**IT IS ORDERED** that all claims of plaintiff Alex Hartley against defendants Dean Morris, LLP, George B. Dean, Jr., John C. Morris, III, Charles H. Heck, Jr., and Candace A. Coutreau are dismissed.[5]

New Orleans, Louisiana, this 6th day of May, 2011.

_____
STANWOOD R. DUVAL, JR.
UNITED STATES DISTRICT JUDGE

---

[5] In moving for summary judgment Dean Morris also relied upon several affirmative defenses, i.e., inability to sue an adversary's attorney, waiver, and res judicata. Having concluded for the reasons state herein above that Dean Morris is entitled to summary judgment on all of plaintiff's claims, the Court need not address those affirmative defenses.