UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**MARY & LARRY PATTERSON, ET AL**          **CIVIL ACTION**

**VERSUS**                                  **NO. 08-5014**

**DEAN MORRIS, L.L.P., ET AL**              **SECTION "K"(2)**

## ORDER AND OPINION

Before the Court is the "Motion for Summary Judgment" filed on behalf of defendants Dean Morris, LLP, George B. Dean, Jr., John C. Morris, III, Charles H. Heck, Jr., and Candace A. Coutreau (referred to collectively herein after as "Dean Morris") (Doc.188) seeking to dismiss all claims of plaintiff Willie Brown against Dean Morris. Having reviewed the pleadings, memoranda, and relevant law, the Court, for the reasons assigned, GRANTS the motion.

### BACKGROUND

On September 27, 1990, Willie and Carolyn Brown executed a $67,989.00 promissory note payable to Fleet Mortgage Corporation ("Fleet"). (Doc. 188, Ex. A -Brown 1). The Browns secured the promissory note with a mortgage on property located at 4424 Perrault Walk, New Orleans, Louisiana. (Doc. 188, Ex. A - Brown 3). Fleet assigned the mortgage to U.S. Bank, N.A. as Trustee with respect to Structured Asset Securities Corporation FHA/VA Mortgage Pass-Through Certificates, Series 1998-RF3 ( "U.S. Bank"). (Doc. 188, Ex. A - Affidavit of George B. Dean, Jr. and John C. Morris, III, ¶ 4, Doc. 188, Ex. A - Brown 2). Aurora Loan Services ("Aurora") serviced the loan.

In early 2002, the Browns failed to make their monthly payment on the note and mortgage. (Doc. 188, Ex. A, Affidavit of George B. Dean, Jr. and John C. Morris, III, ¶ 6, Doc. 188, Ex. A -

Brown 4).  Aurora sent the loan to Dean Morris, L.L.P. to institute foreclosure proceedings.  (Id. at ¶ 6). On July 11, 2002, Dean Morris, acting on behalf of U.S. Bank,  filed a "Petition for Executory Process" in the Civil  District Court for the Parish of Orleans, seeking, among other things,  a Writ of Seizure and Sale to sell the mortgaged property. (Doc. 188, Ex. A - Brown 4).  Upon filing the petition for executory process, Dean Morris paid  $248.00 to the Clerk of Court and advanced $1,200.00 in costs to the Civil Sheriff.  (Doc. 188, Ex. A - Brown 6, 7).  The state court judge ordered that a Writ of Seizure and Sale issue.  (Doc. 188, Ex. A - Brown 5).

On July 8, 2002, Willie Brown authorized Market Mortgage ("Market") to request on his behalf a payoff quote on his loan.  (Doc. 188, Ex. A - Brown 8). On July 12, 2002, Dean Morris, L.L.P. provided an "Estimate Payoff quote," good through August 1, 2002, which reflected the following figures:

| | |
|---|---:|
| Principal Balance | 59,766.33 |
| Interests | 2,838.90 |
| Property Preservation | 35.00 |
| Late Charges | 110.58 |
| Corporate Advance | 65.50 |
| Attorneys Fees | 900.00 |
| Abstract | 393.00 |
| *Clerk | 348.00 |
| *Sheriff | 1,200.00 |
| *Sheriff's Commission | 1,884.49 |
| *Total | 67,541.80 |
| *Estimates | |

(Id.).

On August 6, 2002, Market requested a second  payoff proposal. (Doc. 188, Ex. A - Brown 9). On August 15, 2002, Dean Morris provided Market with an "Estimated Payoff quote," good through September 1, 2002, which reflected the following amounts:

| | |
|---|---:|
| Principal Balance | 59,766.33 |

|                        |            |
|------------------------|-----------:|
| Interests              | 3,312.05   |
| Property Preservation  | 35.00      |
| Late Charges           | 138.07     |
| Corporate Advance      | 45.40      |
| Attorneys Fees         | 900.00     |
| Abstract               | 403.00     |
| *Clerk                 | 348.00     |
| *Sheriff               | 1,354.00   |
| *Sheriff's Commission  | 1,898.91   |
| *Total                 | 68,200.76  |
| *Estimates             |            |

(Doc. 188, Ex. A - Brown 10).

On September 13, 2002, Gwen Dixon of the Youth & Adult Enrichment Network ("YAENI") requested from Dean Morris, on behalf on the Browns, a reinstatement proposal on the Browns' loan. (Doc. 188, Ex. A - Brown 16). On September 18, 2002, prior to Dean Morris sending Gwen Dixon a reinstatement proposal for the Browns' loan, Mr. and Mrs. Brown filed a Voluntary Petition for Chapter 13 bankruptcy.[1] (Doc. 188, Ex. A - Brown 12). Once Dean Morris, L.L.P. learned that the Browns had filed for bankruptcy, Dean Morris put the foreclosure proceeding on hold and cancelled the sale scheduled for October 3, 2002. After the cancellation of the sale of the Browns' property, the Civil Sheriff sent a bill totaling $824.26 to Dean Morris; the bill indicated that Dean Morris was entitled to a $375.74 refund which the Civil Sheriff sent. (Doc. 188, Ex. A - Brown 13). The foreclosure proceeding remained pending.

After halting the foreclosure proceedings, Dean Morris billed Aurora for its work on the foreclosure. Aurora paid Dean Morris $2,425.26 which Dean Morris credited, along with the $375.74 refund[2] from the Civil Sheriff, as follows:

---

[1] *In re Willie B. Brown, Jr*, No. 02-16850 (E.D. La.).

[2] The total amount credited was $2,801.00.

|  |  |
|---|---|
| Sheriff | $1,200.00 |
| Clerk of Court | $ 248.00 |
| Outsourcer Funds | $ 100.00 |
| Title Search/Review/Subtract | $ 423.00 |
| *Mennonite* Notices | $ 112.50 |
| Attorneys' Fee | $ 717.50 |

(Doc. 188, Ex. A, Affidavit of Charles George B. Dean, Jr. and John C. Morris, III, ¶16).

The Browns filed bankruptcy schedules indicating that they had $20.00 "Cash on hand." The Browns listed "U.S. Bank c/o Dean Morris" as a creditor holding a secured claim for $60,000.00 and indicated that they had "mortgage arrears" on their residence in the amount of $12,000.00. (Doc. 188, Ex. A - Brown 14). They stated an intent to pay 100% of the arrears amount over 48 months, i.e. $25.00 per month for the first twelve (12) months and $325 per month for the next 36 months. Those amounts were incorporated into their Chapter 13 Plan which provided for a monthly payment of $350.00 for the first twelve (12) months and $852.61 per month for the next thirty six (36) months. (Doc. 188, Ex. A - Brown 14, 15). U.S. Bank was not the only secured creditor listed in the Browns' bankruptcy schedules.

On September 25, 2002, Dean Morris sent Gwen Dixon an "Estimated reinstatement quote" for the Browns' loan stating the following amounts:

|  |  |
|---|---|
| Payments due | 5,513.84 |
| Late Fees | 193.05 |
| Corporate Advance | 37.50 |
| Property Inspections | 35.00 |
| Attorney Fees | 900.00 |
| Abstract | 448.00 |
| *Clerk | 348.00 |
| *Sheriff | 2,500.00 |
| *Sheriff Commission | 173.38 |
| *Total | 10,148.77 |
| * Estimates |  |

(Doc. 188, Ex. A - Brown 17).

The bankruptcy judge confirmed the Browns' plan on December 10, 2002. (Doc.188, Ex. A - Brown 18). Aurora filed a proof of claim indicating an arrearage of $7,482.37 at the time the Browns filed for bankruptcy, which included the following:

| | |
|---|---|
| Payments | $4,826.00 |
| Payment Late Charges | $ 193.05 |
| Additional Late Charges | $ 0.00 |
| Escrow Shortages | $ 0.00 |
| Pre-petition Legal Fees | $ 900.00 |
| Pre-petition Legal Costs | $1,625.26 |
| Additional charges | $ 37.50 |
| Suspense Balance (Subtracted) | $ 0.00 |
| Total Arrearages: | $7,482.37 |

(Doc. 188, Ex. A - Brown 19). The proof of claim also reflected a "Total Secured Debt" of $66,311.42. (Id.). The Browns did not object to Aurora's proof of claim. On April 1, 2003, the Chapter 13 Trustee filed a "Notice of Intent to Pay Claims including the claim for mortgage arrearages to Aurora totaling $7,482.37 which included pre-petition legal fees and legal costs. (Doc. 188, Ex. A - Brown Ex. 20).

The Browns proved unable to maintain the payments under their confirmed plan. (Doc. 188 Ex. A- Brown 21). Even after amending their plan, the Browns were unable to make the payments called for in the plan. On May 26, 2005, the Trustee filed a "Motion to Dismiss Case or Compel Compliance" (Doc. 188, Ex. A - Brown 35). The bankruptcy judge dismissed the Browns' bankruptcy on July 8, 2005 for noncompliance and ordered that the stay pursuant to 11 U.S.C. §362 be vacated and set aside. (Doc. 188, Ex. A - Brown 36). Thereafter the Trustee filed his Final Report and Account stating that the Browns had paid $3,6640.46 in principal to Aurora during the bankruptcy proceeding. (Doc. 188, Ex. A - Brown 37). That amount is less than the $4,826.00 in past due payments shown on Aurora's proof of claim.

Less than a month after the discharge of their Chapter 13 petition for bankruptcy, the Browns filed *In re Willie Brown*, No. 05-16230 (E.D. La.), a second voluntary petition for Chapter 13 bankruptcy. (Doc. 188, Ex. A - Brown 40). The schedules filed in connection with that bankruptcy petition showed $10.00 "Cash on hand" and $10.00 in a Louisiana Federal Credit Union account. The schedules listed "U.S. Bank c/o Dean Morris, LLP" as a creditor and indicated that the mortgage with U.S. Bark was $9,000.00 in arrears. The Browns proposed paying 100% of the arrearage over 48 months at a rate of $140.00 for the first 36 months and then $330.00 per month for the next 12 months. (Doc. 188, Ex. A - Brown 41). The bankruptcy judge confirmed the Browns' plan. (Doc. 188, Ex. A - Brown 43). After the confirmation of the plan, Aurora filed a proof of claim for $9,850.59 arrearages on the home mortgage at the time the Browns filed the second mortgage; specifically the arrearages were itemized as follows:

| | |
|---|---|
| Past Due Payments for the months of July, 2004 through July, 2005 | $8,841.82 |
| NSF Fees | $   50.00 |
| Post-petition Bankruptcy Fees | $  100.00 |
| Escrow Shortage | $  309.77 |
| Attorney's Fees Re: Foreclosure | $  550.00 |
| Bankruptcy Attorney Fees | $   75.00 |
| Total | $9,850.59 |

(Doc. 188, Ex. A - Brown 44). Aurora later amended its proof of claim to list arrearages totaling $9,012.04 as follows:

| | |
|---|---|
| Past Due Payments for the months of July, 2004 through July, 2005 | $8,841.82 |
| NSF Fees | $   50.00 |
| Post-petition Bankruptcy Fees | $  100.00 |
| Escrow Shortage | $  309.77 |
| Attorney's Fees Re: Foreclosure | $  550.00 |
| Bankruptcy Attorney Fees | $   75.00 |
| Property Preservation | $   24.00 |
| Suspense | $ (938.55) |

        Total        $ 9,012.04

(Doc. 188, Ex. A - Brown 45).

Hurricane Katrina struck New Orleans on August 29, 2005 causing extensive damage to the city as well as to the Browns' property.  In November 2005, after the Browns defaulted on their Chapter 13 plan payments, their bankruptcy counsel requested a suspension of plan payments stating that Mrs. Brown had been laid off from her job and that Mr. Brown, a cab driver, had earned no income for "2+ mos."  (Doc. 188, Ex. A - Brown 46).  On November 3, 2005, the Browns notified the bankruptcy court that their mailing address had changed from 4424 Perrault Walk, New Orleans to an address in Baton Rouge.  (Doc. 188, Ex. A. - Brown 47).  On December 29, 2005, the Trustee objected to the confirmation of the Chapter 13 plan stating "Plan Unfeasible as Proposed. Debtors are not employed."  (Doc. 188, Ex. A - Brown 49).

The Browns received $68,000.00 in insurance proceeds for damages to their home. Thereafter on January 4, 2006, the Browns filed a "Motion for Declaratory Relief to Declare Debtor's Loan to Aurora Loan Services/U.S. Bank Paid in Full for Return of Promissory Note Marked 'PAID' and Mortgage Marked Cancelled."  (Doc. 188, Ex. A - Brown 51).  The next day Aurora provided the Browns' bankruptcy counsel with a payoff statement reflecting the following:

| | |
|---|---|
| Principal Balance | $56,443.97 |
| Interest | $ 8,443.97 |
| Corporate Advance | $    300.00 |
| Unpaid Other Fees | $      25.00 |
| Recording Fee | $      20.00 |
| Total Amount of Payoff | $ 64,832.27 |

(Doc. 188, Ex. A - Brown 52).  The Browns paid their loan in full, and on March 3, 2006, the bankruptcy judge granted the Browns' motion for declaratory relief. (Doc. 1288, Ex. A - Brown 63

(Doc. #40)). The Browns were discharged in bankruptcy on June 1, 2006. (Doc. 188, Ex. A - Brown 63).

On February 17, 2005, while both the bankruptcy and foreclosure proceedings remained pending, Willie Brown, as well as a number of other plaintiffs, filed a putative class action suit against Dean Morris and various lender defendants alleging a variety of claims in the Civil District Court for the Parish of Orleans. Following two unsuccessful attempts to remove the case to federal court, a defendant successfully removed the suit to this Court in 2008. The petition alleges a class of lender defendants consisting of lenders "who used Dean Morris as their attorney, agent, and/or employee, and for whom or during the representation of whom Dean Morris charged and/or collected excessive fees and/or expenses from members of the Plaintiff Class." *Patterson v. Dean Morris*, No. 08-5014, Fifth Supplemental and Amending Petition for Damages, ¶ IX. The petition further alleges that "Dean Morris, acting as the attorney, agent, and/or employee of all of the Lender Defendants instituted collection and/or foreclosure proceedings against the named plaintiffs . . . for sums alleged to be due under mortgages held by the Lender Defendants[]" and that Dean Morris "overstated to the named plaintiffs and to members of the Plaintiff Class the amount of court costs, sheriff's fees, attorney's fees and/or other expenses, thus impairing the rights of and causing harm to plaintiffs and members of the Plaintiff Class *Id,* at ¶ IX, ¶ XI. Plaintiffs also allege that "[t]he Lender Defendants' obligations under the mortgage and related agreements were non-delegable such that the Lender Defendants are liable for the acts and omissions of their attorney, with respect to these obligations." *Id.* at ¶ XIV. The petition seeks damages under the following causes of action:

- conversion;
- unjust enrichment;
- intentional misrepresentation and fraud;
- negligent misrepresentation;

- breach of contract; and
- civil conspiracy.

While the suit remained pending in state court, the state district judge dismissed plaintiffs' negligence claims against Dean Morris. Dean Morris now seeks summary judgment on all of Willie Brown's remaining claims.

## Summary Judgment Standard

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Stults v. Conoco*, 76 F.3d 651 (5th Cir.1996), citing *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 912-13 (5th Cir.), quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986). When the moving party has carried its burden under Rule 56, its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. The nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir.1995).

"A genuine issue of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Pylant v. Hartford Life and Accident Insurance* Company, 497 F.3d 536, 538 (5th Cir. 2007) quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment evidence must be "viewed in the light most

favorable to the nonmovant, with all factual inferences made in the nonmovant's favor." *Bazan ex rel Bazan v. Hildago County*, 246 F.3d 481, 489 (5th Cir. 2001), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 255, 106 S.Ct. at 2513.

> [C]onclusory statements, speculation, and unsubstantiated assertions cannot defeat a motion for summary judgment. The Court has no duty to search the record for material fact issues. Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim.

*RSR Corporation v. International Insurance Company*, 612 F.3rd 851, 857 (5th Cir. 2010).

Intentional Misrepresentation and Fraud

Because all of the claims alleged by plaintiff assert Louisiana state law claims, the Court applies Louisiana substantive law in analyzing the claims. To establish a claim for intentional misrepresentation a plaintiff must prove: "(1) a misrepresentation of a material fact, (2) made with the intent to deceive, (3) causing justifiable reliance with resulting injury." *Systems Engineering and Security, Inc. v. Science & Engineering Associations, Inc*., 962 So.2d 1089, 1091(La. App. 4th Cir. 2007) (internal quotation and citation omitted). Plaintiff asserts that the reinstatement and payoff proposals included inflated attorneys fees and costs, as well as a "Corporate Advance" fee which the Browns were not responsible for paying.

Plaintiff has produced no competent summary judgment demonstrating that he relied on the alleged overcharges and improper charges and sustained damage by relying on those disputed charges. The first two estimated payoff quotes were provided by Dean Morris to Market, apparently in connection with an attempt by the Browns to refinance their loan. Plaintiff has not submitted any evidence even suggesting that the amounts listed on the payoff quotes as attorneys fees and costs, including the "Corporate Advance" had a negative impact on the Browns' attempt

to refinance the loan. Nor is there any evidence suggesting that Mr. Brown had the financial resources to pay even the undisputed outstanding amounts owed on the loan, e.g., the monthly principal and interest and the late fees. Absent evidence that the currently disputed portions of the payoff quotes were the only impediments to refinancing the loan or otherwise paying off the loan, Mr. Brown has failed to raise a genuine issue of material fact concerning his reliance on the alleged improper charges and damages sustained due to that reliance with respect to the alleged misrepresentations in the July 12, 2002 and August 6, 200 pay off proposals. Dean Morris is therefore entitled to summary judgment on plaintiff's claim for intentional misrepresentation involving those payoff proposals.

Nor has Mr. Brown produced any evidence that he relied on the September 25, 2002 reinstatement quote provided by Dean Morris to Gwen Dixon or that he sustained damages as a result of that reliance. At the time that Dean Morris provided Ms. Dixon with that reinstatement quote, the Brown had already filed their petition for bankruptcy protection. Thus, the representations in that proposal could not have caused or impacted the filing of the bankruptcy. Thus, Dean Morris is entitled to summary judgment on the intentional misrepresentation claim related to the September reinstatement quote.

Mr. Brown also claims intentional misrepresentation with respect to the costs and fees in the January 5, 2006 payoff proposal sent by Aurora to Mr. Brown's bankruptcy counsel. Plaintiff has not provided any evidence of a misrepresentation concerning the $300.00 "Corporate Advance" charge, the $25.00 "Unpaid Other Fees" or the $20.00 "Recording Fee." Given the absence of evidence of a misrepresentation concerning any of those charges, Dean Morris is entitled to summary judgment on plaintiff's intentional misrepresentation claim based on the January 5, 2006

payoff proposal.

Turning to plaintiff's fraud claim, "[f]raud is a misrepresentation or a suppression of the truth made with the intention to either obtain an unjust advantage for one party or to cause a loss or inconvenience to another. Fraud may also result from silence or inaction." La. Civ. Code art. 1953. An action for fraud requires: "(1) a misrepresentation of material fact; (2) made with the intent to deceive; and (3) causing justifiable reliance with resultant injury." *Gonzales v. Gonzales*, 20 F.3d 557, 563 (La. App. 4th Cir. 2009). Because the elements of fraud are virtually identical to those necessary to establish a claim of intentional misrepresentation, the same reasoning used in analyzing the claims of intentional misrepresentation applies in evaluating the fraud claim. For the reasons stated herein above, the motion for summary judgment on the fraud claim is granted.

## Conversion Claim

"[C]onversion is a tort consisting of wrongfully depriving a person of possession of his property. The fault may be either the original wrongful acquisition or the subsequent wrongful detention of possession. But, there must be either a wrongful taking or a wrongful detention. " *Oge v. Resolute Insurance Company*, 217 So.2d 738, 740-741 (La. App. 3rd Cir. 1969), citing *Import Sales, Inc. v. Lindeman*, 92 So.2d 574 (1957). There is no evidence that Mr. Brown paid Dean Morris any money. Nor is there any evidence that prior to the foreclosure process being put on hold that the Browns made any payment on their arrearage to Aurora or U.S. Bank which was then used to fund Aurora's payment of Dean Morris's bill. Considering that lack of evidence, Mr. Brown has failed to raise a genuine issue of material fact concerning whether Dean Morris wrongfully deprived him of any property. Therefore, Dean Morris is entitled to summary judgment on plaintiff's conversion claim.

Unjust Enrichment

Article 2298 of the Louisiana Civil Code provides, in pertinent part, that:

> A person who has been enriched without cause at the expense of another person is bound to compensate that person. . . . The remedy declared here is subsidiary and shall not be available if the law provides another remedy for the impoverishment or declares a contrary rule.

The requisite elements of a claim for unjust enrichment are: (1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and the impoverishment, (4) an absence of justification or cause for the enrichment and impoverishment, and (5) no other available remedy at law. *Baker v. Maclay Props. Co.*, 648 So.2d 888, 897 (La. 1995). "The unjust enrichment remedy is 'only applicable to fill a gap in the law where no express remedy is provided.'" *Walters v. MedSouth Record Management, LLC*, 38 So. 3rd 243, 244 (La. 2010), quoting *Mouton v. State*, 525 So.2d 1136, 1142 (La. App. 1st Cir. 1988).

Dean Morris moves for summary judgment on this claim urging that because plaintiff has other remedies available to him, he cannot state a claim for unjust enrichment. Defendant's contention is well founded. Other remedies are, in fact, available to plaintiff, e.g., intentional misrepresentation. In *Walters v. MedSouth Record Management, LLC* the Louisiana Supreme Court concluded that because plaintiff had pleaded a delictual action, plaintiff was "precluded from seeking to recover under unjust enrichment." *Id.* The Court further opined, "[m]oreover, we find it of no moment that plaintiff's tort claims have been held to be prescribed. The mere fact that a plaintiff does not successfully pursue another available remedy does not give the plaintiff the right to recover under the theory of unjust enrichment." *Id.* Similarly, "the existence of a claim on an express or implied contract precludes application of *actio de in rem verso*, for there does not exist

one of the latter's requirements, that there be no other remedy available at law (subsidiarity)." *Morphy, Makofsky, & Masson, Inc. v. Canal Place 2000*, 538 So.2d 569, 572 (La. 1989). That Mr. Brown failed to prevail on the other remedies available to him does not negate the fact that such remedies were available. The availability of an alternative remedy bars Mr. Brown's claim for unjust enrichment and entitles Dean Morris to summary judgment on his claim of unjust enrichment.

## Civil Conspiracy

Article 2324A of the Louisiana Civil Code provides that "[h]e who conspires with another person to commit an intentional or willful act is answerable *in solido*, with that person, for the damage caused by such act." However, it is well recognized that Article 2324 does not itself "impose liability for a civil conspiracy." *Ross v. Conoco, Inc.*, 828 So.2d 546, 552 (La. 2002). Rather, "[t]he actionable element in a claim under [Article 2324] is not the conspiracy itself, but rather the tort which the conspirators agreed to perpetuate and which they commit in whole or in part." *Id.* (internal quotation and citation omitted).

As noted herein above, Mr. Brown has failed to establish a genuine issue of material fact with respect to a tort claim against Dean Morris. Because Dean Morris is entitled to summary judgment on all of plaintiff's underlying tort claims, there can be no predicate tort claim for plaintiff's civil conspiracy claim. Therefore, Dean Morris is also entitled to summary judgment on the civil conspiracy claim.

Moreover, even assuming *arguendo* that Mr. Brown had raised a genuine issue of material fact with respect to a predicate tort offense, Dean Morris would nonetheless still be entitled to summary judgment on this claim. To establish a conspiracy, plaintiff must produce evidence of an agreement between the parties. *Legier and Matherne, APAC v. Great Plains Software, Inc*., 2005

14

WL 1431666, *8 (E.D. La. May 31, 2005).

> Article 2324(A) requires a meeting of the minds or collusion between the parties for the purpose of committing wrongdoing. Evidence of such a conspiracy can be by actual knowledge of both parties or over actions with one another, or that can be inferred from the knowledge of the alleged co-conspirator of the impropriety of the actions taken by the other co-conspirator.

*Id.* (internal quotation and citation omitted). Plaintiff does not offer any specific evidence to establish the requisite agreement to commit a tort. In the absence of evidence of an agreement to commit an underlying tort, Dean Morris is entitled to summary judgment on this claim.

## Breach of Contract

The petition alleges that "Dean Morris' actions on behalf of the Lender Defendants violated provisions of the mortgage and related agreements between plaintiffs and the Lender Defendants." *Patterson v. Dean Morris*, Fifth Supplemental and Amending Petition for Damages, ¶ XIV. Under Louisiana law, "[t]o assert a cause of action for breach of contract, the [plaintiff] must prove both the existence of a contract and privity." *Terrebonne Parish School Board v. Mobil Oil Corporation*, 310 F.3d 870, 888 (5th Cir. 2002).

Dean Morris contends that the claim must fail because there is no contract between Dean Morris and Mr. Brown. Plaintiff claims that the "contract between Dean Morris and U.S. Bank, and the applicable regulations, provide for an 'allowable' attorney fee for full foreclosure proceeding. Plaintiff further contends that he "and other putative class members are third party beneficiaries of the 'allowable' limitation on attorney's fees imposed by regulation and incorporated into contracts to which plaintiffs are third- party beneficiaries." (Doc. 232, p. 8).

Under Louisiana law, "[a] contracting party may stipulate a benefit for a third person called a third party beneficiary." La. Civ. Code art. 1978. Because the Civil Code does not specify the

analytical framework for determining when a contract contains a stipulation *pour autrui*, the requisite criteria have been jurisprudentially developed. *Williams v. Certain Underwriters at Lloyd's of London*, 2010 WL 4009818, *2 (5th Cir. October 13, 2010). Here, no analysis of the individual criteria is required. Plaintiff has not submitted into evidence a copy of the contract between Dean Morris and U.S. Bank or a copy of a contract between Dean Morris and Aurora, and therefore the Court is unable to determine whether that contract includes a stipulation *pour autrui* in favor of borrowers such as Mr. Brown. Moreover, even assuming *arguendo* that plaintiff is a third party beneficiary under a contract between Dean Morris and U.S. Bank or Aurora, Dean Morris is entitled to summary judgment on plaintiff's claim for breach of contract. Although plaintiff's opposition to Dean Morris's motion does not indicate the amount of the alleged "allowable" limitation, the record in this case indicates includes a memorandum dated August 24, 2001 from the U.S. Department of Housing and Urban Development to "All Approved Mortgagees," indicating that the "allowable" amount for judicial foreclosures in Louisiana after October 1, 2001is $900.00 (Doc. 207, Ex. P - Attachment 3). With respect to other plaintiffs in this litigation, counsel for plaintiff has represented that the "allowable" amount is $900.00. Plaintiff has not offered any evidence that Dean Morris received more than $900.00 in attorneys fees. Absent evidence of the contract relied upon and that Dean Morris received more than the "allowable" attorneys fee, plaintiff cannot raise a genuine issue of material fact on this claim for breach of contract.

Plaintiff also alleges that he had a right under the terms of his mortgage to reinstate a delinquent loan, and that Dean Morris, by inflating and thereby misrepresenting the amount of attorney's fees and costs which had to be paid to bring the loan current, deprived him of the right to reinstate his loan. Dean Morris is entitled to summary judgment on this claim as well. Plaintiff

16

has not submitted any competent summary judgment evidence that absent the alleged misrepresentations by Dean Morris, he would have had the financial resources to reinstate his loan and mortgage. Absent such evidence, plaintiff cannot raise a genuine issue of material fact on his breach of contract claim that Dean Morris's alleged misrepresentations deprived him of his right to reinstate his loan. Accordingly, the Court grants Dean Morris's motion for summary judgment and dismisses plaintiff's breach of contract claims. Accordingly,

**IT IS ORDERED** that all claims of plaintiff Willie Brown against defendants Dean Morris, LLP, George B. Dean, Jr., John C. Morris, III, Charles H. Heck, Jr., and Candace A. Coutreau are dismissed.[3]

New Orleans, Louisiana, this 6th day of May, 2011.

STANWOOD R. DUVAL, JR.
UNITED STATES DISTRICT JUDGE

---

[3] In moving for summary judgment Dean Morris also relied upon several affirmative defenses, i.e., inability to sue an adversary's attorney, waiver, settlement, and res judicata. Having concluded for the reasons state herein above that Dean Morris is entitled to summary judgment on all of plaintiff's claims, the Court need not address those affirmative defenses.