UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| MARY & LARRY PATTERSON, ET AL | CIVIL ACTION |
| VERSUS | NO. 08-5014 |
| DEAN MORRIS, L.L.P., ET AL | SECTION "K"(2) |

## ORDER AND OPINION

Before the Court is the "Motion for Summary Judgment" filed on behalf of defendants Dean Morris, LLP, George B. Dean, Jr., John C. Morris, III, Charles H. Heck, Jr., and Candace A. Coutreau (referred to collectively herein after as "Dean Morris") (Doc.190) seeking to dismiss all claims of plaintiff Ronald Singleton against Dean Morris. Having reviewed the pleadings, memoranda, and relevant law, the Court, for the reasons assigned, GRANTS the motion.

BACKGROUND

On July 12, 1999 Ronald Singleton executed a $88,855.00 promissory note payable to Molton, Allen & Williams Corporation ("Molton"). (Doc. 190, Ex. A - Singleton 1). Mr. Singleton secured the promissory note with a mortgage on property located at 13037 Sevres Street, New Orleans, Louisiana. (Doc. 190, Ex. A - Singleton 2). On May 3, 2000 Molton assigned the note and mortgage to Leader Mortgage Company, L.L.C. ("Leader"). (Doc. 190, Ex. A - Singleton 3).

In late 2001 Mr. Singleton defaulted on his monthly payment to Leader and thereafter, Leader sent the file to Dean Morris to institute foreclosure proceedings. (Doc. 190, Ex. A, Affidavit of Charles B. Dean, Jr. and John C. Morris, III, ¶ 7). Dean Morris, on behalf of Leader, filed a Petition for Executory Process on March 15, 2002 in the Civil District Court for the Parish of Orleans, seeking, among other things, a Writ of Seizure and Sale to sell the mortgaged property.

(Doc. 190, Ex. A - Singleton 4).  Upon filing the petition for executory process, Dean Morris paid $248.00 to the Clerk of Court and advanced $1,200.00 in costs to the Civil Sheriff.  (Doc. 190, Ex. A - Singleton 5, 6). On April 3, 2002 a deputy with the Civil Sheriff's Office executed domiciliary service of the Writ of Seizure and Sale on Mr. Singleton.  (Doc. 190, Ex. A - Singleton 7).

Mr. Singleton sought assistance from Gwen Dixon at the Youth & Adult Enrichment Network, Inc. ("YAENI"), and on May 8, 2002, Gwen Dixon requested "reinstatement figures" for Mr. Singleton's loan.  (Doc. 190, Ex. A - Singleton 8).  On May 15, 2002, Dean Morris issued an "Estimated reinstatement quote," good through May 31, 2002, to YAENI; it set out the following amounts:

| | |
|---|---|
| Payments Due | 5,895.52 |
| Late Payments | 383.16 |
| Corporate Advance | 116.18 |
| Attorney Fees | 900.00 |
| Abstract | 354.00 |
| *Clerk | 348.00 |
| *Sheriff | 2,500.00 |
| *Sheriff Commission | 191.85 |
| *Total | 10,688.71 |
| *Estimates | |

(Doc. 190, Ex. A - Singleton 9).  In response to a request from Cook & Associates, acting on behalf of Mr. Singleton, on May 23, 2002, Dean Morris sent the same reinstatement proposal to Cook and Associates.  (Doc. 190, Ex. A - Singleton 10). Dean Morris sent another reinstatement quote to Gwen Dixon on June 17, 2002, which was good through June 26, 2002; it stated the following amounts:

| | |
|---|---|
| Payments Due | 6,632.46 |
| Late Payments | 412.63 |
| Corporate Advance | 116.18 |
| Attorney Fees | 900.00 |
| Abstract | 399.00 |

2

|                    |           |
|--------------------|-----------|
| *Clerk             | 348.00    |
| *Sheriff           | 2,500.00  |
| *Sheriff Commission| 214.84    |
| *Total             | 11,523.11 |
| *Estimates         |           |

(Doc. 190, Ex. A - Singleton 13).

On June 26, 2002 Ronald Singleton filed a voluntary petition for Chapter 13 bankruptcy.[1]

(Doc. 190, Ex. A - Singleton 15). Once Dean Morris learned that Mr. Singleton had filed for

bankruptcy, it put the foreclosure proceeding on hold and cancelled the property sale scheduled for

June 27, 2002. (Doc. 190, Exhibit A - Affidavit of George B. Dean, Jr. and John C. Morris, III, ¶10

mm). On July 1, 2002 Dean Morris received a bill from the Civil Sheriff reflecting total costs of

$833.16 and indicating that Dean Morris was entitled to a $366.84 refund. (Doc. 190, Ex. A -

Singleton 16). The Civil Sheriff refunded the overpayment to Dean Morris. (Doc. 190, Exhibit A -

Affidavit of George B. Dean, Jr. and John C. Morris, III, ¶ 12). The foreclosure proceeding

remained pending.

Thereafter Dean Morris billed Leader which paid Dean Morris $3,308.24. Dean Morris

credited Leader's payment, along with the $366.84 refund[2] from the Civil Sheriff, as follows:

|                              |           |
|------------------------------|-----------|
| Sheriff                      | $1,200.00 |
| Clerk of Court               | $  248.00 |
| Outsourcer Funds             | $  125.00 |
| Title Search/Review/Subtract | $  394.00 |
| Fee                          | $1,708.08 |

(Doc. 190, Ex. A, Affidavit of Charles George B. Dean, Jr. and John C. Morris, III, ¶ 12). Dean

---

[1] *In re Ronald Singleton,* No. 02-14481 (E.D. La.).

[2] The total amount credited was $3,675.08.

3

Morris then sent $1,213.08 to Leader Mortgage Company.[3]  (Doc. 190, Ex. A, Affidavit of Charles

George B. Dean, Jr. and John C. Morris, III,  ¶ 12).

In schedules filed in connection with the Mr. Singleton reported assets of $120,310.00 and

liabilities of $78,808.88.   (Doc. 190, Ex. A - Singleton 24).   Mr. Singleton's schedules indicate

that he had no "Cash on hand," $2,000.00 in a "Hibernia CD,"  $50.00 in a Hibernia National Bank

checking account, and $50.00 in a Hibernia National Bank savings account credit union account.

(Id.).  He identified Leader as a creditor holding a secured claim for $85,000.00 and indicated that

he had "mortgage arrears" on his residence in the amount of $14,000.00. (Id.).   Mr. Singleton

stated an intent to pay 100% of the arrears amount over 54 months at the rate of $157.41 per month.

(Id.).  Mr. Singleton also reported Hibernia National Bank as a creditor holding a secured interest

in a "CD" and indicated an arrearage of $1,000.00 on that debt.  (Id.).    Mr. Singleton proposed a

Chapter 13 Plan to pay secured creditors 100% over 52 months which  included a  total monthly

payment of $303.12.  (Doc. 190, Ex. A - Singleton 21).

On July 23, 2002, Leader filed a Proof of Claim for $10,231.63 which included the

following amounts:

| | |
|---|---|
| Late Payments (10/1/01 - 6/1/02) | $6,632.46 |
| Late Charges (10/1/01 - 6/1/02) | $  265.23 |
| Accrued Late | $  118.88 |
| Monies Advanced | $   93.18 |
| "FC Fees and Costs" | $3,308.24 |

(Doc. 190, Ex. A - Singleton 17).  Thereafter, and prior to confirmation of a plan,  Mr. Singleton

filed a motion to  amend his  Chapter 13 Plan to include an unsecured claim to Providia and to lower

the amount of arrearages owed to Leader based on Leader's Proof of Claim.  (Doc. 190, Ex. A -

---

[3] Dean Morris offers no explanation for the returned funds.

4

Singleton 22).  The proposed amended plan included 100% payment over 48 months with a monthly payment of $273.38. (Doc. 190, Ex. A - Singleton 29).  Plaintiff based his proposed amended plan on a arrearage to Leader of $10,500.00.  (Id.).  The bankruptcy judge confirmed Mr. Singleton's amended plan on September 3, 2002. (Doc. 190, Ex. A - Singleton 23).  On December 11, 2002, the Trustee filed his Notice of Intent to Pay Claims which included proposed payments of $10,231.63 to Leader Mortgage for arrearages.  (Doc. 190, Ex. A - Singleton 25).

In November 2003, after Mr. Singleton failed to make his monthly payment under the Chapter 13 plan, Leader filed a motion seeking relief from the automatic stay of 11 U.S.C. § 362 to enable it to proceed with the pending state foreclosure proceeding. (Doc. 190, Ex. A - Singleton 26).  Mr. Singleton objected to the motion for relief from stay and requested additional time to bring his post-petition arrearage current.  (Doc. 190, Ex. A - Singleton 27).  On December 17, 2003, Mr. Singleton filed a "First Petition to Amend Schedules and Plan Post Confirmation" in which he sought "to include post petition arrearages of $3,928.12, owed to Leader."  (Doc. 190, Ex. A - Singleton 28).  The amendment proposed "a 100%, 57-month bifurcated plan, with payments of $273.38 per month for the first 18 months, and payments of $312.04 per month for the remaining 39 months." (Id.).  The bankruptcy judge approved the amended plan January 14, 2004.  (Doc. 190, Ex. A - Singleton 30).

Also on December 17, 2003, Leader filed an amended Proof of Claim stating an arrearage of $14,159.75 on its secured claim.  (Doc. 190, Ex. A - Singleton 18).  Approximately a week later, the bankruptcy judge granted an "Adequate Protection Order" requiring, among other things, that Mr. Singleton timely pay his regular mortgage payment beginning January 1, 2004 and ordering that if Mr. Singleton failed to timely make his payments to Leader or if the bankruptcy case were

dismissed or converted to a Chapter 7 that Leader would be entitled to *ex parte* relief from the automatic stay on Leader's presentation of an affidavit.   (Doc. 190, Ex. A - Singleton 31). Thereafter the bankruptcy judge amended the adequate protection order to reduce the late fees, attorneys fees and costs at issue to $650.00 and reduced to $14,059.75 the total arrearage owed to Leader. (Doc. 190, Ex. A - Singleton 32).

On March 2, 2005, the Trustee moved to dismiss Mr. Singleton's bankruptcy for failure to comply with his amended Chapter 13 plan.  (Doc. 190, Ex. A - Singleton 36).  Subsequently Leader filed an amended Proof of Claim for arrearages, including pre-petition and post-petition arrearages, of $12,846.27.  (Doc. 190, Ex. A - Singleton 20).  The bankruptcy judge granted the Trustee's motion on March 31, 2005.  (Doc. 190, Ex. A - Singleton 37).   Thereafter the Trustee filed his "Final Report and Account" stating that Mr. Singleton had paid $6,737.62 in arrearages to Leader; the bankruptcy judge approved the Trustee's final account and dismissed the bankruptcy on June 1, 2005.  (Doc. 190, Ex. A - Singleton 38, 39).

After the bankruptcy judge dismissed the bankruptcy, Dean Morris billed Leader $750.00, less $150.00 for outsourcer funds and $150.00 for clerk of court fees.  (Doc. 190, Ex. A - Affidavit of George B. Dean, Jr. and John C. Morris, III, ¶ 19).  Dean Morris then adjusted the fee by an additional $100.00 resulting in a net fee of $350.00 for bankruptcy services.  (Id.).

On September 20, 2006, Mr. Singleton filed a second voluntary petition for Chapter 13 bankruptcy.  (Doc. 190, Ex. A - Singleton 40).  The schedules filed in connection with that bankruptcy petition reflected that Mr. Singleton had $50.00 "Cash on hand" and $50.00 in a Capital

One bank account.  The schedules also indicated that U.S. Bank[4] had a secured claim of $68,000.00 on Mr. Singleton's residence at 13037 Sevres Street, New Orleans, and that he owed U.S. Bank $16,000.00 in  arrears on that debt.  (Id.)  U.S. Bank filed a Proof of Claim for $32,770.47 in mortgage arrearages, including $741.00 in "Foreclosure Attorney Fees" and $1,419.02 in "Foreclosure Costs/Court Costs."  (Doc. 190, Ex. A - Singleton 43).  Seven months later U.S. Bank amended its Proof of Claim to increase the amount of arrearages to $34,020.61, including "Foreclosure Attorney Fees" of $1769.16 and "Foreclosure Costs/Court Costs of $1,641.00."  (Doc. 190, Ex. A - Singleton 44).

Ultimately the bankruptcy judge confirmed  a 100%,  60 month Chapter 13 Plan that provided for Mr. Singleton to pay $316.70 for the first month and $670.00 per month for the remaining 59 months.  (Doc. 190, Ex. A - Singleton 47). The plan included payments for $34,000.00 in arrearages to U.S. Bank.  (Id.).   Thereafter the Trustee filed a "Notice of Intention to Pay Claims," including $32,770.47 to U.S. Bank.  (Doc. 190, Ex. A - Singleton 51).

Mr. Singleton proved unable to make  payments in compliance with the plan, and on July 19, 2007, the bankruptcy judge dismissed the bankruptcy.  (Doc. 190, Ex. A - Singleton 56).  On October 1, 2007, the Trustee filed his "Final Report and Account" indicating that pursuant to Mr. Singleton's  Chapter 13 Plan, the Trustee distributed $523.01 to U.S. Bank for mortgage arrearages. (Doc. 190, Ex. A - Singleton 58).  The bankruptcy judge approved the Trustees Final Report and Account on November 7, 2007, (Doc. 190, Ex. A - Singleton 59).

On February 17, 2005, while the first bankruptcy proceeding remained pending, Mr.

---

[4] The record filed in connection with this motion does not indicate how or when U.S. Bank became the owner of the note and mortgage.

Singleton, as well as a number of other plaintiffs, filed a putative class action suit against Dean Morris and various lender defendants alleging a variety of claims in the Civil District Court for the Parish of Orleans. Following two unsuccessful attempts to remove the case to federal court, a defendant successfully removed the suit to this Court in 2008. The petition alleges a class of lender defendants consisting of lenders "who used Dean Morris as their attorney, agent, and/or employee, and for whom or during the representation of whom Dean Morris charged and/or collected excessive fees and/or expenses from members of the Plaintiff Class." *Patterson v. Dean Morris*, No. 08-5014, Fifth Supplemental and Amending Petition for Damages, ¶ IX. The petition further alleges that "Dean Morris, acting as the attorney, agent, and/or employee of all of the Lender Defendants instituted collection and/or foreclosure proceedings against the named plaintiffs . . . for sums alleged to be due under mortgages held by the Lender Defendants[]" and that Dean Morris "overstated to the named plaintiffs and to members of the Plaintiff Class the amount of court costs, sheriff's fees, attorney's fees and/or other expenses, thus impairing the rights of and causing harm to plaintiffs and members of the Plaintiff Class *Id,* at ¶ IX, ¶ XI. Plaintiffs also allege that "[t]he Lender Defendants' obligations under the mortgage and related agreements were non-delegable such that the Lender Defendants are liable for the acts and omissions of their attorney, with respect to these obligations." *Id.* at ¶ XIV. The petition seeks damages under the following causes of action:

- conversion;
- unjust enrichment;
- intentional misrepresentation and fraud;
- negligent misrepresentation;
- breach of contract; and
- civil conspiracy.

While the suit remained pending in state court, the state district judge dismissed plaintiffs' negligence claims against Dean Morris.

On June 26, 2009, Mr. Singleton, individually and on behalf of "all putative members of the Settlement Class" Leader, and U.S. Bank filed a "Joint Motion for Class Certification, for Preliminary Approval of Proposed Class Action Settlement, for Approval of Notice Related to Class Certification, and to Schedule Final Fairness Hearing" in the state court proceedings. (Doc. 190, Ex. C). Under the proposed settlement Ronald Singleton and the "Settlement Class Members" would release "the claims pertaining to Leader Mortgage, L.L.C., and U.S. Bank National Association"[5] in exchange for a specified amount of compensation. The Settlement Class would consist of Subclass A and Subclass B. Subclass A members, i.e., those who "received a written estimated reinstatement or payoff quote prepared by or including fax/expense figures furnished by Dean Morris, LLP and who present the reinstatement or payoff quote" would each receive $1,975.00. (Id. , Stipulation of Settlement, p. 3). Subclass B members, i.e., all members of the Settlement Class who are not members of Subclass A, would receive $675.00. Additionally, Mr. Singleton, in his capacity as "Class Representative Plaintiff" would receive $13,000.00. Mr. Singleton executed a Stipulation of Settlement which provided "[t]his Agreement affects a release of the claims pertaining to Leader Mortgage Company, L.L.C. and U.S. Bank National Association and does not affect claims or potential claims against other parties to the action or other potentially liable persons." (Id. p. 4).

Dean Morris now seeks summary judgment on all of Ronald Singleton's remaining claims.

### Summary Judgment Standard

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment should

---

[5] The "claims" referred to were those alleged by plaintiffs in *Patterson v. Dean Morris, et al*, No. 05-2174 (Orleans Parish Civ. Dist. Court, Louisiana) and *Bauer v. Dean Morris, et al*, No. 05-2173 (Orleans Parish Civ. Dist. Court, Louisiana).

be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Stults v. Conoco*, 76 F.3d 651 (5th Cir.1996), citing *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 912-13 (5th Cir.), quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986).   When the moving party has carried its burden under Rule 56, its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.   The nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir.1995).

 "A genuine issue of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " *Pylant v. Hartford Life and Accident Insurance* Company, 497 F.3d 536, 538 (5th Cir. 2007) quoting *Anderson  v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).   Summary judgment evidence must be "viewed in the light most favorable to the nonmovant, with all factual inferences made in the nonmovant's favor." *Bazan ex rel Bazan v. Hildago County*, 246 F.3d 481, 489 (5th Cir. 2001), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 255, 106 S.Ct. at 2513.

> [C]onclusory statements, speculation, and unsubstantiated assertions cannot defeat a motion for summary judgment.  The Court has no duty to search the record for material fact issues.  Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim.

10

*RSR Corporation v. International Insurance Company*, 612 F.3rd 851,857 (5th Cir. 2010).

Intentional Misrepresentation and Fraud

Because all of the claims alleged by plaintiff assert Louisiana state law claims, the Court applies Louisiana substantive law in analyzing the claims.  To establish a claim for intentional misrepresentation a plaintiff must prove: "(1) a misrepresentation of a material fact, (2) made with the intent to deceive, (3) causing justifiable reliance with resulting injury."  *Systems Engineering and Security, Inc.  v. Science & Engineering Associations, Inc*., 962 So.2d 1089, 1091(La. App. 4th Cir. 2007) (internal quotation and citation omitted).  Plaintiff asserts  that the reinstatement proposals sent by Dean Morris contained inflated attorneys fees and costs.

Plaintiff has produced no competent summary judgment demonstrating that he relied on the alleged overcharges and sustained damage by relying on those disputed charges.  Mr. Singleton paid nothing directly to Dean Morris.  Moreover, although Mr. Singleton did make payments under his Chapter 13 plans for mortgage arrearages to Leader and U.S. Bank, there is no evidence suggesting that any of the sums paid to those lenders represented payment of allegedly inflated amounts for attorneys fees and costs in connection with the foreclosure proceeding.  Under the first Chapter 13 Plan Mr. Singleton paid $6,737.62 in "mortgage arrearages."  (Doc. 190, Ex. A - Singleton 38).  That amount is $157.07 less than the total owed for the undisputed  pre-petition late monthly payments ($6,632.46) and the late charges ($262.63).  (Doc. 190, Ex. A - Singleton 20).  With respect to the second Chapter 13 Plan, Mr. Singleton made payments of only $523.01 against an undisputed pre-petition arrearage of $26,180.28 in monthly payments. (Doc. 190, Ex. A - Singleton 43).

Furthermore, Mr. Singleton submitted no evidence indicating that the amounts listed on the

11

Reinstatement Proposal as attorneys fees and costs had a negative impact on his attempt to reinstate his loan.  Nor is there any evidence suggesting that at the time Dean Morris issued the reinstatement proposals that Mr. Singleton had the financial resources to pay even the undisputed outstanding amounts owed on the loan, e.g., the monthly principal and interest and the late fees.  Absent evidence that the currently disputed portions of the reinstatement proposal  were the only impediments to reinstating the loan Mr. Singleton has failed to raise a genuine issue of material fact concerning his reliance on the alleged improper charges and damages sustained due to that reliance with respect to the alleged misrepresentations. Dean Morris is therefore entitled to summary judgment on plaintiff's claim for intentional misrepresentation.

Turning to plaintiff's fraud claim, "[f]raud is a misrepresentation or a suppression of the truth made with the intention to either obtain an unjust advantage for one party or to cause a loss or inconvenience to another.  Fraud may also result from silence or inaction." La. Civ. Code art. 1953. An action for fraud requires: "(1) a misrepresentation of material fact; (2) made with the intent to deceive; and (3) causing justifiable reliance with resultant injury." *Gonzales v. Gonzales*, 20 F.3d 557, 563 (La. App. 4th Cir. 2009).  Because the elements of fraud are virtually identical to those necessary to establish a claim of intentional misrepresentation,  the same  reasoning used in analyzing the claim of intentional misrepresentation applies in evaluating  the fraud claim.  For the reasons stated herein above, the motion for summary judgment on the fraud claim is granted.

Conversion Claim

"[C]onversion is a tort consisting of  wrongfully depriving a person of possession of his property.  The fault may be either the original wrongful acquisition or the subsequent wrongful detention of possession.  But, there must be either a wrongful taking or a wrongful detention. " *Oge*

12

*v. Resolute Insurance Company*, 217 So.2d 738, 740-741 (La. App. 3rd Cir. 1969), citing   *Import*

*Sales, Inc. v. Lindeman*, 92 So.2d 574 (1957).  There is no evidence that Mr. Singleton paid Dean

Morris any money. Additionally, given that Mr. Singleton's payments under his Chapter 13 plans

were less than the undisputed amounts owed for late monthly payments and late charges, there is no

evidence that Mr. Singleton paid any allegedly inflated costs or attorneys fees which were used to

fund Leader's payment to Dean Morris for attorneys fees and costs for the foreclosure proceeding.

Considering that lack of evidence, Mr. Singleton has failed to raise a genuine issue of material fact

concerning whether Dean Morris wrongfully deprived him of any property.  Therefore, Dean Morris

is  entitled to summary judgment on plaintiff's conversion claim.

Unjust Enrichment

Article 2298 of the Louisiana Civil Code provides, in pertinent part,  that:

> A person who has been enriched without cause at the expense of
> another person is bound to compensate that person. . . . The remedy
> declared here is subsidiary and shall not be available if the law
> provides another remedy for the impoverishment or declares a
> contrary rule.

The requisite elements of a claim for unjust enrichment are: (1) an enrichment, (2) an

impoverishment, (3) a connection between the enrichment and the impoverishment, (4) an absence

of justification or cause for the enrichment and impoverishment, and (5) no other available remedy

at law. *Baker v. Maclay Props. Co.*, 648 So.2d 888, 897 (La. 1995). "The unjust enrichment remedy

is 'only applicable to fill a gap in the law where no express remedy is provided.'" *Walters v.*

*MedSouth Record Management, LLC*, 38 So. 3rd 243, 244 (La. 2010), quoting *Mouton v. State*, 525

So.2d 1136, 1142 (La. App. 1st Cir. 1988).

Dean Morris moves for  summary judgment on this claim urging  that because plaintiff has

13

other remedies available to him, he  cannot state a claim for unjust enrichment.  Defendant's

contention is well founded.   Other remedies are, in fact, available to plaintiff, e.g., intentional

misrepresentation.  In *Walters v. MedSouth Record Management, LLC* the Louisiana Supreme Court

concluded that because plaintiff had pleaded a delictual action, plaintiff was "precluded from

seeking to recover under unjust enrichment." *Id.*  The Court further opined, "[m]oreover, we find

it of no moment that plaintiff's tort claims have been held to be prescribed.  The mere fact that a

plaintiff does not successfully pursue another available remedy does not give the plaintiff the right

to recover under the theory of unjust enrichment." *Id.*   Similarly, "the existence of a claim on an

express or implied contract precludes application of *actio de in rem verso*, for there does not exist

one of the latter's requirements, that there be no other remedy  available at law (subidiarity)."

*Morphy, Makofsky, & Masson, Inc. v. Canal Place 2000*, 538 So.2d 569, 572 (La. 1989).  That Mr.

Singleton failed to prevail on the other remedies available to him does not negate the fact that such

remedies were available.  The availability of an alternative remedy bars Mr. Singleton's  claim for

unjust enrichment and entitles Dean Morris to summary judgment on his claim of unjust enrichment.

Civil Conspiracy

Article 2324A of the Louisiana Civil Code  provides that "[h]e who conspires with another

person to commit an intentional or willful act is answerable *in solido*, with that person, for the

damage caused by such act."  However, it is well recognized that Article 2324 does not itself

"impose liability for a civil conspiracy."  *Ross v. Conoco, Inc.*, 828 So.2d 546, 552 (La. 2002).

Rather, "[t]he actionable element in a claim under [Article 2324] is not the conspiracy itself, but

rather the tort which the conspirators agreed to perpetuate and which they commit in whole or in

part."  *Id.* (internal quotation and citation omitted).

14

As noted herein above, Mr. Singleton has failed to establish a genuine issue of material fact with respect to a tort claim against Dean Morris. Because Dean Morris is entitled to summary judgment on all of plaintiff's underlying tort claims, there can be no predicate tort claim for plaintiff's civil conspiracy claim. Therefore, Dean Morris is also entitled to summary judgment on the civil conspiracy claim.

Moreover, even assuming *arguendo* that Mr. Singleton had raised a genuine issue of material fact with respect to a predicate tort offense, Dean Morris would nonetheless still be entitled to summary judgment on this claim. To establish a conspiracy, plaintiff must produce evidence of an agreement between the parties. *Legier and Matherne, APAC v. Great Plains Software, Inc*., 2005 WL 1431666, *8 (E.D. La. May 31, 2005).

> Article 2324(A) requires a meeting of the minds or collusion between the parties for the purpose of committing wrongdoing. Evidence of such a conspiracy can be by actual knowledge of both parties or over actions with one another, or that can be inferred from the knowledge of the alleged co-conspirator of the impropriety of the actions taken by the other co-conspirator.

*Id.* (internal quotation and citation omitted). Plaintiff does not offer any specific evidence to establish the requisite agreement to commit a tort. In the absence of evidence of an agreement to commit an underlying tort, Dean Morris is entitled to summary judgment on this claim.

## Breach of Contract

The petition alleges that "Dean Morris' actions on behalf of the Lender Defendants violated provisions of the mortgage and related agreements between plaintiffs and the Lender Defendants." *Patterson v. Dean Morris*, Fifth Supplemental and Amending Petition for Damages, ¶XIV. Under Louisiana law, "[t]o assert a cause of action for breach of contract, the [plaintiff] must prove both the existence of a contract and privity." *Terrebonne Parish School Board v. Mobil Oil Corporation*,

15

310 F.3d 870, 888 (5th Cir. 2002).

Dean Morris contends that the claim must fail because there is no contract between Dean Morris and Mr. Singleton. Plaintiff claims that the "[c]ontracts between Dean Morris and the lenders, and the applicable regulations, provide for an 'allowable' attorney fee for a full foreclosure proceeding." (Doc. 230, p. 8). Plaintiff further contends that he "and other putative class members are third party beneficiaries of the 'allowable' limitation on attorney's fees imposed by regulation and incorporated into contracts to which plaintiffs are third- party beneficiaries" (Doc. 230, p. 8).

Under Louisiana law, "[a] contracting party may stipulate a benefit for a third person called a third party beneficiary." La. Civ. Code art. 1978. Because the Civil Code does not specify the analytical framework for determining when a contract contains a stipulation *pour autrui*, the requisite criteria have been jurisprudentially developed. *Williams v. Certain Underwriters at Lloyd's of London*, 2010 WL 4009818, *2 (5th Cir. October 13, 2010). Here, no analysis of the individual criteria is required. Plaintiff has not submitted into evidence a copy of the contract between Dean Morris and Leader, and therefore the Court is unable to determine whether that contract includes a stipulation *pour autrui* in favor of borrowers such as Mr. Singleton. Moreover, even assuming *arguendo* that plaintiff is a third party beneficiary under a contract between Dean Morris and Leader, Dean Morris is entitled to summary judgment on plaintiff's claim for breach of contract. Counsel for plaintiff notes that Dean Morris has acknowledged that the "allowable" amount is $900.00. However, plaintiff has not offered any evidence that Dean Morris received more than $900.00 in attorneys fees for the foreclosure proceeding. Absent evidence of the contract relied upon and that Dean Morris received more than the "allowable" attorneys fee for the foreclosure proceeding, plaintiff cannot raise a genuine issue of material fact on this claim for

breach of contract.

Plaintiff also alleges that he had a right under the terms of his mortgage to reinstate a delinquent loan, and that Dean Morris, by inflating and thereby misrepresenting the amount of attorney's fees and costs which had to be paid to bring the loan current, deprived him of the right to reinstate his loan. Dean Morris is entitled to summary judgment on this claim as well.  As noted herein above, plaintiff has not submitted any competent summary judgment evidence that absent the alleged misrepresentations by Dean Morris, he would have  had the financial resources to reinstate his loan and mortgage.  Absent such evidence, plaintiff cannot raise a genuine issue of material fact on his  breach of contract claim that Dean Morris's alleged misrepresentations deprived him of his right to reinstate his loan.  Accordingly, the Court grants Dean Morris's motion for summary judgment and dismisses plaintiff's breach of contract claims.  Accordingly,

**IT IS ORDERED** that all claims of plaintiff Ronald Singleton against defendants Dean Morris, LLP, George B. Dean, Jr.,  John C. Morris, III, Charles H. Heck, Jr., and Candace A. Coutreau are dismissed.[6]

New Orleans, Louisiana, this 6th day of May, 2011.

_____
STANWOOD R. DUVAL, JR.
UNITED STATES DISTRICT JUDGE

---

[6] In moving for summary judgment Dean Morris also relied upon several affirmative defenses, i.e., inability to sue an adversary's attorney, waiver, settlement and res judicata. Having concluded for the reasons state herein above that Dean Morris is entitled to summary judgment on all of plaintiff's claims, the Court need not address those affirmative defenses.