**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**MARY & LARRY PATTERSON, ET AL**                    CIVIL ACTION

**VERSUS**                                                           NO. 08-5014

**DEAN MORRIS, L.L.P., ET AL**                          SECTION "K"(2)

## ORDER AND OPINION

Before the Court is the "Motion for Summary Judgment" filed on behalf of defendants Dean Morris, LLP, George B. Dean, Jr.,  John C. Morris, III, Charles H. Heck, Jr., and Candace A. Coutreau  (referred to collectively herein after as "Dean Morris") (Doc.187) seeking to dismiss plaintiff Charles Battiste's claims   against Dean Morris.   Having reviewed the pleadings, memoranda, and relevant law, the Court, for the reasons assigned, grants the motion in part and denies it in part.

BACKGROUND

On June 21, 1994, Charles Battiste  executed a $19,635.00 promissory note payable to Countrywide Funding Corporation.  (Doc. 187, Ex. A - Battiste 1). Mr. Battiste secured the promissory note with a mortgage on property located at 6600 Coveview Court,  New Orleans, Louisiana. (Doc. 187, Ex. A - Battiste 2). Thereafter the note was transferred to Countrywide Home Loans, Inc. ("Countrywide").  (Doc. 187, Ex. A, Affidavit of George B. Dean, Jr. and John C. Morris, III, ¶ 4).

Beginning in early 2002, Mr. Battiste failed to make his monthly note payments.  On September 25, 2002 Dean Morris, acting on behalf of Countrywide,  filed a "Petition for Executory Process" in the Civil District Court for the Parish of Orleans  seeking, among other things,  a Writ

of Seizure and Sale to sell the mortgaged property. (Doc. 187, Ex. A - Battiste 3).  Upon filing the

petition for executory process, Dean Morris paid  $248.00 to the Clerk of Court and advanced

$1,200.00 in costs to the Civil Sheriff.  (Doc. 187, Ex. A - Battiste 8, 9). In due course, the Writ of

Seizure and Sale issued.  (Doc. 187, Ex. A, Affidavit of George B. Dean, Jr. and John C. Morris, III,

¶ 4).

After Dean Morris filed the suit,  Mr. Battiste requested a reinstatement proposal.  On

October 5, 2002 Dean Morris sent Mr. Battiste an "Estimated reinstatement quote," good through

October 31, 2002, which set out the following amounts:

| | |
|---|---:|
| Payments Due | $2,058.00 |
| Late Payments | 58.08 |
| Corporate Advance | 350.00 |
| Property Inspections | 106.75 |
| Attorneys Fees | 900.00 |
| *Clerk | 348.50 |
| *Sheriff | 1,200.00 |
| *Sheriff Commission | 77.18 |
| *Total | 5,098.51 |
| *Estimates | |

(Doc. 187, Ex. A - Battiste 5).  On October 30, 2002, Dean Morris, at Mr. Battiste's request, sent

Mr. Battiste an amended "Estimated reinstatement quote," good through October 31, 2002, which

included the following amounts:

| | |
|---|---:|
| Payments Due | $2,058.00 |
| Late Payments | 58.08 |
| Corporate Advance | 350.00 |
| Property Inspections | 106.75 |
| Attorneys Fees | 900.00 |
| *Clerk | 348.50 |
| *Sheriff | 500.00 |
| *Sheriff Commission | 77.18 |
| *Total | 4,398.51 |
| *Estimates | |

(Doc. 187, Ex. A - Battiste 6).

On November 1, 2002, Mr. Battiste paid Dean Morris $4,398.51, the exact amount stated in the second reinstatement proposal,  to reinstate his loan.  (Doc. 187, Ex. A, Affidavit of George B. Dean, Jr. and John C. Morris, III, ¶ 11). Following Dean Morris's receipt of the funds, it  moved to dismiss the foreclosure suit; the state court judge dismissed the foreclosure on November 25, 2002. (Doc. 187, Ex. A - Battiste 7).   Dean Morris states that it "billed" Countrywide "for its services related to the Battiste foreclosure and initially earned an attorney's fee of $317.18." (Doc. 187-1, p. 3).  Dean Morris  allocated the funds paid by Mr. Battiste as follows:

| | |
|---|---|
| Sheriff | $1,200.00 |
| Clerk | $  248.50 |
| Orleans Abstract | $   60.00 |
| Countrywide | $2,572.83 |
| Dean Morris | $  317.18 |

( Doc. 187, Ex. A, Affidavit of George B. Dean, Jr. and John C. Morris, III, ¶ 11).  It is unclear whether Dean Morris forwarded the full sum paid by Mr. Battiste to Countrywide and was then reimbursed for the amount in excess of the $2,572.83 owed to Countrywide or whether Dean Morris sent Countrywide the $2,572.83 owed to it and retained the remainder of the payment.

In early 2003, Mr. Battiste again defaulted on his monthly mortgage payments.  On November 17, 2003, pursuant to instructions from Countrywide, Dean Morris filed another "Petition for Executory Process" in the Civil District Court for the Parish of Orleans seeking, among other things,  a Writ of Seizure and Sale to sell the mortgaged property. (Doc. 187, Ex. A - Battiste 11).[1]  Upon filing the petition for executory process, Dean Morris paid  $248.00 to the Clerk of

_____

[1] Federal National Mortgage Association is the named plaintiff in the second foreclosure suit. (Doc. 187, Ex. A - Battiste 11).  Dean Morris represents that Federal National Mortgage Association was an investor in Mr. Battiste's note. (Doc. 187, Ex. A, Affidavit of Charles B.

Court and advanced $1,200.00 in costs to the Civil Sheriff.  (Doc. 187, Ex. A - Battiste 8, 9).  The

state court issued the Writ of Seizure and Sale.  (Doc. 187, Ex. A, Affidavit of George B. Dean, Jr.

and John C. Morris, III, ¶ 4, Ex. A - Battiste 13).

After Dean Morris filed the suit, Mr. Battiste sought assistance from Gwen Dixon at the

Youth & Adult Enrichment Network, Inc. ("YAENI"), and she  requested "reinstatement figures"

for Mr. Battiste's loan.  (Doc. 187, Ex. A - Battiste 14).  On December 22, 2003, Dean Morris sent

Gwen Dixon a "Reinstatement Proposal," good through December 30,2003, which set out the

following amounts:

|  |  |
|---|---|
| Payments Due | $2,538.90 |
| Late Payments | 127.23 |
| Escrow Deficit | 122.18 |
| Inspections | 112.50 |
| Foreclosure Attorney's Fees and Costs | 4,393.02 |
| Total | 7,293.83 |

(Doc. 187, Ex. A - Battiste 16).

Less than a month after Dean Morris issued the December 22, 2003 Reinstatement Proposal,

Mr. Battiste field a voluntary petition for Chapter 13 bankruptcy protection.  (Doc. 187, Ex. A -

Battiste 19).  Upon receiving notice of Mr. Battiste's bankruptcy filing, Dean Morris halted the

foreclosure proceedings, including the sale of the property scheduled for January 29, 2004.

On January 14, 2004, the Civil Sheriff sent Dean Morris a final invoice reflecting costs of

$906.20 and also refunded $293.80 to Dean Morris. (Doc. 187, Ex. A - Battiste 16).  Thereafter

Dean Morris billed its client which then paid Dean Morris $2,074.20.  Dean  Morris credited that

Morris, Jr. and John C. Dean, III, ¶ 13).

payment, along with the $293.80 refund[2] from the Civil Sheriff, as follows:

| | |
|---|---|
| Sheriff | $1,200.00 |
| Clerk of Court | $ 306.00 |
| Orleans Abstract | $ 77.00 |
| Attorneys Fee | $ 785.00 |

(Doc. 187, Ex. A, Affidavit of Charles George B. Dean, Jr. and John C. Morris, III, ¶ 16).

The bankruptcy schedules filed by Mr. Battiste reflected that he had $20.00 "Cash on hand" and $100.00 in a credit union savings account. (Doc. 187, Ex. A - Battiste 19). The plan proposed payment of 100% of the secured and unsecured debts with payments of $269.33 per month for forty eight (48) months. (Doc. 187, Ex. A - Battiste 20). The bankruptcy judge confirmed the plan on March 9, 2004. (Id.). On April 6, 2004, Countrywide filed a proof of claim indicating "Arrearages Due" of $5,570.49 for the following:

| | |
|---|---|
| Payments | $ 1,933.50 |
| Accrued Late Charges | 70.56 |
| Foreclosure Fees | 675.00 |
| Previous Foreclosure F/C CFC Title | 400.00 |
| Court Costs | 1,399.20 |
| Inspection Fees | 112.50 |
| Escrow Shortage | 920.93 |
| Uncollected Late Charges | 58.80 |

(Doc. 187, Ex. A - Batiste 17). Approximately a year later, on March 15, 2005, Countrywide amended its proof of claim to reduce the "Court Costs" to $1,212.20 which reduced the "Arrearages Due" to $5,383.49. (Doc. 187, Ex. A - Batiste 18). Mr. Battiste did not file an objection to Countrywide's proof of claim. The Trustee filed a "Notice of Intent to Pay Claims" stating that he intended to pay the mortgage arrearages of $5,570.49 to Countrywide. (Doc. 187, Ex. A - Battiste 21).

---

[2] The total amount credited was $2,388.00.

On June 2, 2005, approximately two and a half years after Mr. Battiste reinstated his loan in November 2002, the Civil Sheriff refunded $1,048.82, in excess costs to Dean Morris.  (Doc. 187-1, p. 3, Doc. 187, Ex. A, Affidavit of George B. Dean, Jr. and John C. Morris, III, ¶ 12).  Dean Morris retained those funds "and attributed [the funds] to attorneys' fees[,]" resulting in "a total attorney's fee of $1,366.00 for the first Battiste foreclosure. . .."  (Doc. 187-1, p. 3).

In August 2005, Hurricane Katrina struck New Orleans.  In February, 2006 Mr. Battiste sent Countrywide a full payoff of his loan with funds obtained from insurance funds related to Hurricane Katrina.  (Doc. 187, Ex. A, Affidavit of Charles B. Dean, Jr. and John C. Morris, III, ¶ 24). Dean Morris did not collect any fees or charges in connection with that loan payoff.  (Id.).  The bankruptcy judge granted Mr. Battiste a "Discharge of Debtor After Completion of Chapter 13 Plan" on August 1, 2006. (Doc. 187, Ex. A - Battiste 22).  The state judge, on motion of Federal National Mortgage Association, dismissed the foreclosure proceeding on May 31, 2007. (Doc. 187, Ex. A - Battiste 23).

 On February 17, 2005, while the bankruptcy proceeding remained pending, Mr. Battiste, and a number of other plaintiffs, filed a putative class action suit against Dean Morris and various lender defendants alleging a variety of claims in the Civil District Court for the Parish of Orleans. Following two unsuccessful attempts to remove the case to federal court, a defendant successfully removed the suit to this Court in 2008.  The petition alleges a class of lender defendants consisting of lenders "who used Dean Morris as their attorney, agent, and/or employee, and for whom or during the representation of whom Dean Morris charged and/or collected excessive fees and/or expenses from members of the Plaintiff Class." *Patterson v. Dean Morris*, No. 08-5014, Fifth Supplemental and Amending Petition for Damages, ¶ IX.  The petition further alleges that "Dean Morris, acting as the attorney, agent, and/or employee of all of the Lender Defendants instituted collection and/or

6

foreclosure proceedings against the named plaintiffs . . . for sums alleged to be due under mortgages held by the Lender Defendants[]" and that Dean Morris "overstated to the named plaintiffs and to members of the Plaintiff Class the amount of court costs, sheriff's fees, attorney's fees and/or other expenses, thus impairing the rights of and causing harm to plaintiffs and members of the Plaintiff Class *Id,* at ¶ IX, ¶ XI. Plaintiffs also allege that "[t]he Lender Defendants' obligations under the mortgage and related agreements were non-delegable such that the Lender Defendants are liable for the acts and omissions of their attorney, with respect to these obligations." *Id.* at ¶ XIV. The petition seeks damages under the following causes of action:

- conversion;
- unjust enrichment;
- intentional misrepresentation and fraud;
- negligent misrepresentation;
- breach of contract; and
- civil conspiracy.

While the suit remained pending in state court, the state district judge dismissed plaintiffs' negligence claims against Dean Morris.

Dean Morris now seeks summary judgment on all of Mr. Battiste's remaining claims.

### Summary Judgment Standard

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Stults v. Conoco*, 76 F.3d 651 (5th Cir.1996), citing *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 912-13 (5th Cir.), quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct.

2548, 2552-53, 91 L.Ed.2d 265 (1986).   When the moving party has carried its burden under Rule 56, its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.   The nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial."  *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986);  *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir.1995).

  "A genuine issue of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' "  *Pylant v. Hartford Life and Accident Insurance* Company, 497 F.3d 536, 538 (5th Cir. 2007) quoting *Anderson  v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).   Summary judgment evidence must be "viewed in the light most favorable to the nonmovant, with all factual inferences made in the nonmovant's favor."  *Bazan ex rel Bazan v. Hildago County*, 246 F.3d 481, 489 (5th Cir. 2001), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 255, 106 S.Ct. at 2513.

> [C]onclusory statements, speculation, and unsubstantiated assertions cannot defeat a motion for summary judgment.  The Court has no duty to search the record for material fact issues.  Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim.

*RSR Corporation v. International Insurance Company*, 612 F.3rd 851, 857 (5th Cir. 2010).

Judicial Estoppel

Before addressing Dean Morris's motion with respect to plaintiff's individual claims, it is necessary to analyze Dean Morris's contention that plaintiff's claims are barred by judicial estoppel because plaintiff failed to identify as contingent assets in his bankruptcy schedules the claims in this suit.  The doctrine of judicial estoppel bars a party from assuming inconsistent positions in litigation.

8

*Brandon v. Interfirst Corp.*, 858 F.2d 266, 268 (5th Cir. 1988).   Judicial estoppel is designed "to protect the integrity of the judicial process, by prevent[ing] parties from playing fast and loose with the courts to suit the exigencies of self interest." *In re Coastal Plains, Inc.*, 179 F.3d 197, 205 (5th Cir. 1999)(internal quotations and citation omitted).   Judicial estoppel applies when (1) a party's position is clearly inconsistent with a previous position; (2) the court accepted the previous position; and (3) the non-disclosure was not inadvertent. *Kane v. National Union Fire Insurance Co.*, 535 F.3d 380, 385-386 (5th Cir. 2008).   With respect to judicial estoppel, "inadvertence requires either that the debtor lacks knowledge of the undisclosed claim *or* has no motive for its concealment.   Id. at 386 (internal quotation and citation omitted).

Mr. Battiste filed this suit more than a year after he filed his bankruptcy petition.   It is axiomatic that debtors in bankruptcy have a "continuing duty to disclose all pending claims and potential claims." *Kane v. National Union Fire Insurance Company*, 535 F.3d at 384-385, citing 11 U.S.C. § 521(1).   Thus, Mr. Battiste's failure to amend his bankruptcy schedules to disclose this suit as a contingent asset of his bankruptcy estate is clearly inconsistent with his duty to disclose all pending claims.   That inconsistency satisfies the first prong of the test for judicial estoppel. However, judicial estoppel is inapplicable because there is no evidence that Mr. Battiste's  non-disclosure of the claims of this suit was not inadvertent.

A "debtor's failure to satisfy its statutory disclosure duty is 'inadvertent' only when, in general the debtor lacks knowledge of the undisclosed claim *or* has no motive for its concealment." *Coastal Plains*, 179 F.3d at 210.   Mr. Battiste's proposed Chapter 13 Plan included provisions to pay 100% of his secured and unsecured debts over a 48 month period.   As noted herein above, the bankruptcy judge confirmed that plan.   Because Mr. Battiste's plan provided for full payment of his

debts, failure to disclose this suit as a contingent asset and a subsequent recovery in this suit would not result in a windfall to Mr. Battiste to the detriment of his creditors.  Moreover, there is no evidence that Mr. Battiste did not make full payment of his debts under the plan.  The bankruptcy judge entered a discharge order entitled "Discharge of Debtor After Completion of Chapter 13 Plan," and attached to that order was an "Explanation of Bankruptcy Discharge in a Chapter 13 Case" which stated, in pertinent part, ""[t]his court order grants a discharge to the person named as the debtor after the debtor has completed all payments under the chapter 13 plan."  (Doc. 187, Ex. A - Battiste 22).  That discharge establishes that Mr. Battiste made the  payments required  under his Chapter 13 Plan which provided for 100% payment to all of Mr. Battiste's creditors.  There is no evidence that Mr. Battiste had a motive to conceal these claims.  Given the lack of motive to conceal these claims, the Court concludes that Mr. Battiste inadvertently failed to disclose these claims.  That finding renders the defense of judicial estoppel inapplicable.

Dean Morris also contends that because the bankruptcy judge confirmed  Mr. Battiste's Chapter 13 Plan, the doctrine of *res judicata* bars all of his claims in this litigation.  "Federal law determines the res judicata effect of a prior federal judgment." *Meza v. General Battery Corp.*, 908 F.2d 1262, 1265 (5th Cir. 1990).

Under the doctrine of *res judicata*, "a final judgment on the merits precludes the parties or their privies from relitigating  issues that were or could have been raised in that action." *Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980).  *Res judicata* is "the 'venerable legal cannon' that insures the finality of judgments and thereby conserves judicial resources and protects litigants from multiple lawsuits." *United States v. Shanbaum*, 10 F.3d 305, 310 (5th Cir. 1994) quoting *Medina v. I.N.S.,* 993 F.2d 499, 503 (5th Cir. 1993).

> Four elements must be met for a claim to be barred by res judicata:
> "(1) the parties must be identical in the two actions; (2) the prior judgment must have been rendered by a court of competent jurisdiction; (3) there must be a final judgment on the merits; and (4) the same claim or cause of action must be involved in both cases."

*Oreck Direct, LLC,* 560 F.3d 398, 401 (5th Cir. 2009) quoting *In re Ark-La-Tex Timber Co.,* 482 F.3d 319, 330 (5th Cir. 2007). The burden of proving *res judicata* rests on the party claiming the benefit of the doctrine. Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d § 4405.

"It has long been recognized that a bankruptcy court's order confirming a plan of reorganization is given the same effect as a district court's judgment on the merits for claim preclusion purposes." *Eubanks v. F.D.I.C.,* 977 F.2d 166, 170 (5th Cir. 1992). Plaintiff does not dispute that a court of competent jurisdiction confirmed Mr. Battiste's Chapter 13 plan and that the order confirming that plan constitutes a final judgment on the merits. Rather, Mr. Battiste urges that *res judicata* is inapplicable because Dean Morris was not a party to the bankruptcy proceedings and further contends that the same claim or cause of action is not involved in bankruptcy proceedings and in his suit.

Dean Morris acknowledges that it was not a party to the bankruptcy; however, it asserts that *res judicata* nonetheless applies because it shared an "identity of interests" with Countrywide, a party to the bankruptcy. There are circumstances under which a prior judgment may bind a person who is not a party to the previous litigation. *Eubanks v. F.D.I.C.,* 977 F.2d at 170, *Meza v. General Battery Corp.,* 908 F.2d at 1266. "The identity of the parties test is met not only as to parties to the earlier litigation, but also to those in privity with them." *Howell Hydrocarbons, Inc. v. Adams,* 897 F.2d 183, 188 (5th Cir. 1990). Privity exists "in just three narrowly-defined circumstances: (1) where

the non-party is a successor in interest to a party's interest in property; (2) where the non-party controlled the prior litigation; and (3) where the non-party's interests were adequately represented by a party to the original suit." *Meza v. General Battery Corp.*, 908 F.2d at 1266; see also *Howell Hydrocarbon, Inc. v. Adams*, 897 F.2d at 188. Here, the only arguable applicable circumstance is that Countrywide adequately represented Dean Morris's interests in the prior proceeding.

To fall within the recognized parameters of "adequately represented," it is not enough to demonstrate that the non-party had interests parallel to those of the party to the prior litigation or that "the non-party may be interested in the same questions or proving the same facts." *Eubanks v. F.D.I.C.,* 977 F.2d at 170. Adequate representation occurs where a party in the prior suit is so closely aligned with a non-party as to be the non-party's virtual representative. *Id.* Virtual representation requires that there be "an express or implied legal relationship in which parties to the first suit are accountable to non-parties who file a subsequent suit raising identical issues." *Meza v. General Battery Corp.*, 908. F.2d at 1273.

Dean Morris points to no facts or law establishing an express or implied legal relationship between itself and Countrywide which makes Countrywide accountable to Dean Morris. The facts, as developed in the current record, do not appear to indicate that Countrywide is accountable to Dean Morris. By the time Countrywide filed its proof of claim in Mr. Battiste's bankruptcy, Countrywide had apparently already paid Dean Morris the attorney's fees and costs it was obligated to pay Dean Morris under its contract with it. While it is true that Countrywide filed a proof of claim in Mr. Battiste's bankruptcy proceedings, Countryside appears to have been simply recouping the money it previously paid to Dean Morris and acting as the conduit by which additional attorney's fees and costs, charged by Dean Morris were funneled to the debtor for payment. This situation

does not appear to satisfy the requirements of virtual representation.  Moreover, as demonstrated by this suit, there are potential conflicts of interest between Countrywide  and Dean Morris that are inconsistent with the concept of virtual representation.  Based on the current record before the Court, Dean Morris has not established that Countrywide virtually represented it and therefore has not satisfied the privity requirement necessary to establish identity of parties for purposes of *res judicata*.  Therefore, at this time the defense of *res judicata* does not bar Mr. Battiste's claims.[3] Dean Morris may reurge this defense at a later time if it develops additional facts which it thinks support a determination of virtual representation.

Intentional Misrepresentation and Fraud

Because all of the claims alleged by plaintiff assert Louisiana state law claims,  Louisiana substantive law applies in analyzing the claims.   Plaintiff asserts a claim for intentional misrepresentation against Dean Morris based on his  allegation  that the reinstatement quotes issued by Dean Morris included inflated attorney's fees and foreclosure costs.

To establish a claim for intentional misrepresentation a plaintiff must prove: "(1) a misrepresentation of a material fact, (2) made with the intent to deceive, (3) causing justifiable reliance with resulting injury."  *Systems Engineering and Security, Inc.  v. Science & Engineering Associates, Inc*., 962 So.2d 1089, 1091(La. App. 4th Cir. 2007) (internal quotation and citation omitted).

Dean Morris issued three reinstatement quotes to Mr. Battiste: (1) October 5, 2002, (2) October 30, 2002, and (3) December 22, 2003.  Plaintiff has produced no competent summary

---

[3] Because Dean Morris failed to satisfy the "identity of parties" requirement for *res judicata*, the Court need not analyze whether the same cause of action involved in this suit was also involved in the bankruptcy proceeding.

judgment evidence demonstrating that he relied on the alleged overcharges in the October 5, 2002 reinstatement proposal and sustained damages as a result of that reliance.  Mr. Battiste has not submitted any evidence suggesting that he made any payment to Dean Morris or Countrywide as a result of receiving that disputed reinstatement proposal.  Furthermore, Mr. Battiste presented no evidence indicating that the amounts included on the reinstatement proposal as attorneys fees and costs had a negative impact on any attempt to reinstate his loan. Nor is there any evidence supporting a conclusion that at the time Dean Morris issued the reinstatement proposal Mr. Battiste had the financial resources to pay even the undisputed outstanding amounts on the loan, e.g., the monthly principal and interest and the late fees.  Absent evidence that the disputed portions of the reinstatement quote were the only impediments to reinstating the loan, Mr. Battiste has failed to raise a genuine issue of material fact concerning his reliance on the alleged improper charges and damages sustained due to that reliance with respect to the alleged misrepresentations in the October 5, 2002 reinstatement quote.

    That same analysis applies equally to the December 22, 2003 reinstatement notice.  Mr. Battiste's bankruptcy schedules do not indicate that he had the financial resources to pay even the undisputed portions of his arrearages.  Therefore, Dean Morris is entitled to summary judgment on plaintiff's intentional misrepresentation claim with respect to the December 22, 2003 reinstatement proposal.

    In analyzing whether the various Dean Morris defendants are entitled to summary judgment on plaintiff's claim of intentional misrepresentation with respect to the October 30, 2002 reinstatement proposal, the Court will separately address the claims against Dean Morris, L.L.P., the claims against the partners, George B. Dean, Jr. and John C. Morris, III, and the claims against

the non-partner lawyers, Charles H. Heck, Jr. and Candace A. Coutreau.

The October 30, 2002 reinstatement proposal listed, among other costs, "Sheriff" costs of $500.00 and a "Sheriff's Commission" of $77.18.  (Doc. 187, Ex. A - Battiste 6).  Mr. Battiste paid those amounts as well as all of the other amounts listed in that reinstatement proposal.  The various Dean Morris defendants concede that on June 2, 2005, the Civil Sheriff refunded $1,048.82 to Dean Morris, L.L.P. as "the unapplied portion" of the $1,200.00 security deposit paid by Dean Morris, L.L.P. on September 24, 2002 in connection with the first foreclosure proceeding.  Based on that refund, the actual Sheriff's costs for Mr. Battiste's first foreclosure proceeding totaled only $151.18, far less than the $577.18 represented by Dean Morris, L.L.P. in the October 30, 2002 reinstatement proposal to be the Sheriff's costs.  Considering that evidence there is a genuine issue of material fact concerning whether Dean Morris, L.L.P. misrepresented the various fees and costs in connection with Mr. Battiste's first foreclosure proceeding in the October 30, 2002 reinstatement proposal.

The Court further concludes that there is a genuine issue of material fact concerning whether Dean Morris, L.L.P.  had an intent to deceive.  In the corporate deposition of Dean Morris, L.L.P., Mr. Morris testified, in pertinent part, that:

> [O]ur overall policy really hasn't changed, because our policy has always been to estimate enough to make sure that when we are at risk for the fees and costs that we collect enough to pay all the costs and reserve unto ourselves a reasonable attorney's fee. Our policy has been that all along. Our practices, you know- we've gone through periods of time when we were better at estimating.  I mean, in the - I think in the late nineties it was easier because the costs were lower. Something escalated in the early 2000s and we got burned a few times, as I recall, vaguely, and the - the costs would like, come out of nowhere.  So, we would add more, you know.  We'd kind of deal with it on a - somewhat month-by-month basis, you know.  I mean, there might've been hundreds of changes in practices, but our policy was always to estimate enough to make sure that we collected enough to pay all the costs that might accrue, plus whatever is left over would

> be our attorney's fee, and to make sure that that amount was within the terms of the contract with the borrower and was  reasonable an [sic] amount.

Doc. 227, Ex. 3, p. 144-145.[4]  Admittedly the issue as to whether the plaintiff has produced sufficient evidence of intent to deceive is close.  However, viewing the evidence in the light most favorable to Mr. Battiste and with all factual inferences drawn in his favor as required, the Court concludes that this testimony is sufficient to present a genuine issue of material fact concerning Dean Morris L.L.P.'s intent to deceive plaintiffs, including Mr. Battiste, as to the costs incurred in foreclosure proceedings.[5]

The Court further  concludes that a genuine issue of material fact exists with respect to Mr. Battiste's justifiable reliance on the alleged misrepresentations with resulting injury. On November 1, 2002, Mr. Battiste paid Dean Morris $4,398.51, the exact amount stated in the reinstatement proposal, to reinstate his loan.  (Doc. 187, Ex. A, Affidavit of George B. Dean, Jr. and John C. Morris, III, ¶ 11.)     That evidence  establishes a genuine issue of material fact concerning Mr. Battiste's reliance on the alleged misrepresentations of fact.

Dean Morris asserts that Mr. Battiste sustained no damages because he signed a promissory

------

[4] Plaintiff did not submit the corporate deposition of Dean Morris, L.L.P. as an exhibit to its opposition to Dean Morris's motion.  Because plaintiff filed excerpts of that deposition with its opposition to Dean Morris's motion for summary judgment for a number of  other plaintiffs, the Court considers the failure to file the same deposition excerpts in opposition to this motion to be a mere clerical oversight, and in the interest of judicial economy cites the relevant excerpts submitted in connection with another plaintiff's opposition to Dean Morris's motion.

[5] Having concluded that plaintiff presented sufficient evidence to raise a genuine issue of material fact concerning Dean Morris, L.L.P.'s intent to deceive, the Court need not address Dean Morris, L.L.P.'s contention that plaintiff's claim fails as a matter of law because a party asserting a claim against his adversary's attorney is limited to claims arising from intentional acts.

note obligating him to pay attorneys fees of not less than $2,500.00 in the event he defaulted on the note.  However, given that Mr. Battiste overpaid, at a minimum, the Sheriff's costs, there is a genuine issue of material fact concerning whether Mr. Battiste sustained damages due to his justifiable reliance on the representations in the October 30, 2002 reinstatement proposal.

Dean Morris, L.L.P. urges that it is entitled to summary judgment because Mr. Battiste's claims are barred by prescription.  This contention lacks merit.  "Delictual actions are subject to a liberative prescription of one year."  La. Civ. Code art. 3492.  "To determine whether a claim is prescribed, a court looks to the time when a plaintiff *knew or should have known* that a cause of action arose or existed and prescription statutes are strictly construed against prescription and in favor of the claim that is said to be extinguished."  *Gonzalez v. Gonzalez,* 20 So.3d 557, 562 (La. App. 4th Cir. 2009).  "Prescription does not run against one who is ignorant of the facts upon which his cause of action is based, as long as such ignorance is not willful, negligent or unreasonable."  *Griffin v. Kinberger*, 507 So.2d 821, 823 (La. 1987).

Mr. Battiste testified that when he met with Gwen Dixon of YAENI in December, 2003, he "didn't know I had a problem[]" with overcharges.  (Doc. 223, Ex. B, Depo. of Charles Kerry Battiste, p. 154).  Additionally, during his deposition Mr. Battiste was asked "[t]he first time that you became aware that you were being overcharged excessive fees, Sheriff's fees, any fees was in the summer of 2004 when Miss Dixon sent you to meet Mr. Enow.  Correct?"  (Doc. 223, Ex. B, Depo. of Charles Kerry Battiste,  p. 273).  Mr. Battiste answered "[c]orrect."  (Id.).  That meeting with Mr. Enow occurred less than twelve (12) months before Mr. Battiste filed this suit in February, 2005.  Construing the evidence in the light most favorable to plaintiff, there is a genuine issue of material fact concerning when Mr. Battiste knew or should have known of the alleged overcharges.

17

Therefore, Dean Morris, L.L.P. is not entitled to summary judgment on Mr. Battiste's tort claims based on prescription.

Dean Morris, L.L.P. further contends that Mr. Battiste's claims are barred by the doctrine of voluntary payment. The Court disagrees. It is well established that "money voluntarily paid with knowledge of the facts cannot be recovered back." *Ken Lawler Builders v. Delaney*, 892 So.2d 778. 780 (La. App. 2nd Cir. 2005). The voluntary payment doctrine "exists because of 'the stabilizing legal principle preventing payors from disturbing the status quo by demanding reimbursement subsequently of payments made by them voluntarily *with full knowledge* of [the] facts.'" *Sanders v. Washington Mutual Home Loans, Inc.*, 248 Fed. Appx. 513, 515 (5th Cir. 2007), quoting *Whitehall Oil Co. v. Boagni*, 229 So.2d 702, 705 (1969) (emphasis added). Dean Morris, L.L.C. urges that *Sanders v. Washington Mutual Home Loans, Inc.,* supports the application of the voluntary payment doctrine in this case. *Sanders* however can be readily distinguished. Unlike here, in *Sanders* there was no allegation that the challenged fee "was excessive, unwarranted, or unjustified." *Sanders v. Washington Mutual Home Loans, Inc.*,  248 Fed. Appx. at 517. Thus, where, as here, there is a genuine issue of material fact concerning the accuracy of the amounts paid, the doctrine is inapplicable. If there were in fact misrepresentations about the fees and costs, then the voluntary payment could not have been made with full knowledge of the facts.  It is the alleged misrepresentations that distinguish Mr. Battiste's case from *Sanders* and render the voluntary payment doctrine inapposite.

Alternatively Dean Morris, L.L.P. contends that it is entitled to summary judgment because Mr. Battiste  waived his state court objections to the foreclosure proceeding by failing to assert them in an injunction proceeding to arrest the seizure and sale of his property or by filing a suspensive

appeal from the order directing the issuance of the writ of seizure and sale.  Defendant's position

lacks merits.  Article 2642 of the Louisiana Code of Civil Procedure provides:

> Defenses and procedural objections to an executory proceeding may
> be asserted either through an injunction proceeding to arrest the
> seizure and sale as provided in Articles 2571 through 2754, or a
> suspensive appeal from the order directing the issuance of the writ of
> seizure and sale, or both.

"It is well settled that all defenses and procedural objections to an executory process proceeding are

waived if the debtor allows the seizure and sale to proceed uncontested by either a suit for injunction

or suspensive appeal."  *Plumbing Supply House v. Century National Bank*, 440 So.2d 173, 177 (La.

App. 4th Cir. 1983).  However, where, as here, the plaintiff's damage claim is not based on defenses

and procedural objections to the use of executory process, *Plumbing Supply House v. Century

National Bank*, and the other cases cited by defendant[6] are inapposite.  *Avery v. Citimortgage, Inc*,

15 So.3d 240 (La. App. 1st Cir. 2009) sets out the proper analysis for evaluating a claim for damages

not based on defenses and procedural objections to the issuance of executory process.  There,

following the adjudication of property via executory process, the mortgagor of property filed suit

seeking to annul the judgment or alternatively seeking damages for negligence and unjust

enrichment.  The plaintiff mortgagor asserted that he had made the proper payments to the

mortgagee but that the mortgagee had not properly credited the payments to his account.  The

mortgagee sought dismissal of the case based on *res judicata* and failure to state a claim.  In

affirming the trial court's finding of *res judicata*, the  appellate court outlined the following law

---

[6]*First Guaranty Bank v. Baton Rouge Petroleum Center, Inc.*, 529 So.2d 834 (La. 1988);
*Antoine v. Chrysler Financial Corp.*, 782 So.2d 651 (La. App. 4th Cir. 2001);  *Citizens Bank &
Trust Company*, 498 So.2d 217 (La. App. 1st Cir. 1986); *Ford Motor Credit Company v. Herron*,
234 So.2d 517 (La. App. 3rd Cir. 1970).

applicable to executory process:

> Defenses and procedural objections to an executory proceeding may be asserted either through an injunction proceeding to arrest the seizure and sale as provided in Articles 2751 through 2754, or a suspensive appeal from the order directing the issuance of the writ of seizure and sale, or both.  La. C.C.P. art. 2642.

> The defendant in the executory proceeding may arrest the seizure and sale of the property by injunction when the debt secured by the security interest, mortgage, or privilege is extinguished, or is legally unenforceable, or if the procedure required by law for an executory process has not been followed.  La. C.C.P. article 2751.  And as a general rule, in an appeal from an order issuing a writ of seizure and sale via executory process, the sole contention that can be raised is the authenticity of the process itself.

*Id.* at 243.   In reversing the trial court's dismissal of the claims for damages, the court opined:

> Although it appears that [plaintiff] did not attempt to arrest the seizure and sale of his residence by injunction under La. C.C.P. art. 2751 or to timely appeal the executory process judgment, this lack of action on his part is of no moment because [plaintiff] is not asserting that the debt was legally unenforceable or that it had been extinguished as required to obtain injunctive relief.

> . . .

> Moreover, [plaintiff] does not raise any contentions that, at the time of the executory process lawsuit, the debt was legally unenforceable, that the debt had been extinguished, or that the procedure required by law for an executory proceeding had not been followed as required to arrest the seizure and sale of his residence.  See La. C.C.P. art. 2751.

Id. at 244.  Based on the reasoning applied in *Avery,* a challenge to the quantum of the attorney's fees and costs does not fall within the scope of challenges deemed waived by the mortgagor if not raised within  the executory process proceeding itself or in a suspensive appeal.   Therefore, defendant's contention that it is entitled to summary judgment based on the defense of waiver fails.  Because Mr. Battiste has presented sufficient evidence to raise a genuine issue of material fact with

respect to each element of his claim for intentional misrepresentation with respect to the October 30, 2002 reinstatement proposal, the Court denies Dean Morris L.L.P. summary judgment on that claim.

As to defendants George B. Dean, Jr. and John C. Morris, III, partners in Dean Morris, L.L.P., the Court finds that the evidence creating the genuine issues of material fact on the intentional misrepresentation claim against the firm, also raises genuine issues of material fact on that claim as to the partners. In general, as partners in Dean Morris, L.L.P., Mr. Dean and Mr. Morris are each bound for their virile share of the debts of the partnership. La. C. C. art. 2817; *Hart v. Theus, Grisham, Davis & Leigh, LLP*, 877 So.2d 1157,1161 (La. App. 2nd Cir. 2004). However, the Court takes judicial notice that Dean Morris, L.L.P. is a registered limited liability partnership, and therefore neither Mr. Dean nor Mr. Morris can be held "individually liable for the liabilities and obligations of the partnership arising from . . . intentional misconduct committed in the course of the partnership business by another partner or a representative of the partnership . . .." La. Rev. Stat. 9:3431.

As noted previously, during the deposition of Dean Morris, L.L.P., Mr. Morris testified, in pertinent part, that:

> [O]ur policy has always been to estimate enough to make sure that when we are at risk for the fees and costs that we collect enough to pay all the costs and reserve unto ourselves a reasonable attorney's fee. Our policy has been that all along. Our practices, you know- we've gone through periods of time when we were better at estimating. I mean, in the - I think in the late nineties it was easier because the costs were lower. Something escalated in the early 2000s and we got burned a few times, as I recall, vaguely, and the - the costs would like, come out of nowhere. So, we would add more, you know. We'd kind of deal with it on a - somewhat month-by-month basis, you know. I mean, there might've been hundreds of changes in practices, but our policy was always to estimate enough to make

21

> sure that we collected enough to pay all the costs that might accrue,
> plus whatever is left over would be our attorney's fee, and to make
> sure that that amount was within the terms of the contract with the
> borrower and was reasonable an [sic] amount.

(Doc. 227, Ex. 3, p. 144-145).  As noted herein above, in considering a motion for summary judgment the Court is obligated to construe all facts and inferences in the light most favorable to the non-moving party. *Bazan ex rel Bazan v. Hildago County*, 246 F.3d at 489.  Therefore, for purposes of this motion, the Court infers that the references to "we" and "our" in Mr. Morris's testimony refers to the partnership and further infers that as partners Mr. Dean and Mr. Morris had input concerning the policy and practices adopted by the firm with respect to foreclosure fees and costs. Given those inferences, the Court concludes that Mr. Dean and Mr. Morris are not entitled to summary judgment on this claim and denies their motions for summary judgment on the intentional misrepresentation claim.

There is no evidence that Mr. Heck or Ms. Couteau are partners in Dean Morris, L.L.P. Therefore, they cannot be held liable for the acts of Dean Morris L.L.P. and can be held to be liable only for their own acts in connection with the handling of Mr. Battiste's foreclosure proceedings. Plaintiff has not provided any evidence that either Mr. Heck or Ms. Couteau made any misrepresentation to Mr. Battiste.  Given the absence of such evidence, Mr. Heck and Ms. Couteau are entitled to summary judgment on plaintiff's claim of intentional misrepresentation.

Turning to plaintiff's fraud claim, "[f]raud is a misrepresentation or a suppression of the truth made with the intention to either obtain an unjust advantage for one party or to cause a loss or inconvenience to another.  Fraud may also result from silence or inaction." La. Civ. Code art. 1953. An action for fraud requires: "(1) a misrepresentation of material fact; (2) made with the intent to deceive; and (3) causing justifiable reliance with resultant injury." *Gonzales v. Gonzales*, 20 F.3d

at 563.  Because the elements of fraud are virtually identical to those necessary to establish a claim of intentional misrepresentation,  the same  reasoning used in analyzing the claims of intentional misrepresentation against the various Dean Morris defendants applies in evaluating  the claims of fraud against those same defendants.  For the reasons stated herein above, the motion for summary judgment on the fraud claim is granted as to all defendants with respect to the claims related to the October 5, 2002 and December 22, 2003 reinstatement proposals, and with respect to the October 30, 2002, reinstatement proposal the motion is granted as to Charles H. Heck, Jr. and Candace A. Couteau and denied as to Dean Morris, L.L.P., George B. Dean, Jr., and John C. Morris, III.

Conversion Claim

"[C]onversion is a tort consisting of wrongfully depriving a person of possession of his property.  The fault may be either the original wrongful acquisition or the subsequent wrongful detention of possession.  But, there must be either a wrongful taking or a wrongful detention. " *Oge v. Resolute Insurance Company*, 217 So.2d 738, 740-741 (La. App. 3rd Cir. 1969), citing *Import Sales, Inc. v. Lindeman*, 92 So.2d 574 (1957).  Plaintiff has provided evidence that he provided Dean Morris, L.L.P. with reinstatement funds for his loan.  That payment, coupled with the genuine issue of material fact concerning whether Dean Morris, L.L.C. misrepresented the costs and fees associated with the foreclosure proceeding,  raises a genuine issue of material fact concerning whether  Dean Morris, L.L.P.  wrongfully deprived Mr. Battiste of any property, and precludes granting the motion for summary judgment as to Dean Morris, L.L.P.   For the same reasons stated herein above, the motion for summary judgment by George B. Dean, Jr. and John C. Morris, III is also denied.  Because there is no  evidence that Charles H. Heck, Jr. or Candace A. Couteau made any misrepresentations to Mr. Battiste, the Court grants their motion for summary judgment on the

23

conversion claim.

## Unjust Enrichment

Article 2298 of the Louisiana Civil Code provides, in pertinent part, that:

> A person who has been enriched without cause at the expense of another person is bound to compensate that person. . . . The remedy declared here is subsidiary and shall not be available if the law provides another remedy for the impoverishment or declares a contrary rule.

The requisite elements of a claim for unjust enrichment are: (1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and the impoverishment, (4) an absence of justification or cause for the enrichment and impoverishment, and (5) no other available remedy at law. *Baker v. Maclay Props. Co.*, 648 So.2d 888, 897 (La. 1995). "The unjust enrichment remedy is 'only applicable to fill a gap in the law where no express remedy is provided.'" *Walters v. MedSouth Record Management, LLC*, 38 So. 3rd 243, 244 (La. 2010), quoting *Mouton v. State*, 525 So.2d 1136, 1142 (La. App. 1st Cir. 1988).

Dean Morris moves for summary judgment on this claim urging that because plaintiff has other remedies available to him, Mr. Battiste cannot state a claim for unjust enrichment. Defendant's contention is well founded. Other remedies are, in fact, available to plaintiff, e.g., intentional misrepresentation. In *Walters v. MedSouth Record Management, LLC* the Louisiana Supreme Court concluded that because plaintiff had pleaded a delictual action, plaintiff was "precluded from seeking to recover under unjust enrichment." *Id.* The Court further opined, "[m]oreover, we find it of no moment that plaintiff's tort claims have been held to be prescribed. The mere fact that a plaintiff does not successfully pursue another available remedy does not give the plaintiff the right to recover under the theory of unjust enrichment." *Id.* Similarly, "the

existence of a claim on an express or implied contract precludes application of *actio de in rem verso*, for there does not exist one of the latter's requirements, that there be no other remedy  available at law (subidiarity)." *Morphy, Makofsky, & Masson, inc. v. Canal Place 2000*, 538 So.2d 569, 572 (La. 1989).  That Mr. Battiste  failed to prevail on the other remedies available to him does not negate the fact that such remedies were available.  The availability of an alternative remedy bars Mr. Battiste's claim for unjust enrichment and entitles Dean Morris to summary judgment on plaintiff's claim of unjust enrichment.

Civil Conspiracy

Article 2324A of the Louisiana Civil Code  provides that "[h]e who conspires with another person to commit an intentional or willful act is answerable *in solido*, with that person, for the damage caused by such act."  However, it is well recognized that Article 2324 does not itself "impose liability for a civil conspiracy."  *Ross v. Conoco, Inc.*, 828 So.2d 546, 552 (La. 2002). Rather, "[t]he actionable element in a claim under [Article 2324] is not the conspiracy itself, but rather the tort which the conspirators agreed to perpetuate and which they commit in whole or in part."  *Id.* (internal quotation and citation omitted).

As noted herein above, plaintiff has failed to establish a genuine issue of material fact with respect to any tort claim against Charles H. Heck, Jr. or Candace A. Couteau.  Because Mr. Heck and Ms. Couteau are entitled to summary judgment on all of plaintiff's underlying tort claims, there can be no predicate tort for plaintiff's civil conspiracy claim.  Therefore, Charles H. Heck, Jr. and Candace A. Couteau are entitled to summary judgment on plaintiff's civil conspiracy claim.

As for the civil conspiracy claims against Dean Morris, L.L.P., George B. Dean, Jr. and John C. Morris, III, although Mr. Battiste has raised genuine issues of material fact with respect to his

25

claims for intentional misrepresentation, fraud, and conversion, against those defendants, that evidence does not  preclude summary judgment on the claim for civil conspiracy. To establish a conspiracy, plaintiff must produce evidence of an agreement between the parties.  *Legier and Matherne, APAC v. Great Plains Software, Inc*., 2005 WL 1431666, *8 (E.D. La. May 31, 2005).

> Article 2324(A) requires a meeting of the minds or collusion between the parties for the purpose of committing wrongdoing.  Evidence of such a conspiracy can be by actual knowledge of both parties or over actions with one another, or that can be inferred from the knowledge of the alleged co-conspirator of the impropriety of the actions taken by the other co-conspirator.

*Id.*  (internal quotation and citation omitted).  Plaintiff  does not offer any specific evidence of an agreement to commit a tort.  In the absence of such evidence Dean Morris, L.L.C.,  George B. Dean, Jr. and John C. Morris, III, are entitled to summary judgment on this claim.

### Breach of Contract

The petition  alleges that "Dean Morris' actions on behalf of the Lender Defendants violated provisions of the mortgage and related agreements between plaintiffs and the Lender Defendants." *Patterson  v. Dean Morris*, Fifth Supplemental and Amending Petition for Damages, ¶ XIV.  Under Louisiana law, "[t]o assert a cause of action for breach of contract, the [plaintiff] must prove both the existence of a contract and privity." *Terrebonne Parish School Board v. Mobil Oil Corporation*, 310 F.3d 870, 888 (5th Cir. 2002).

Dean Morris contends  that the claim must fail  because there is no contract between Dean Morris and Mr. Battiste.  Plaintiff claims that "the contract between Dean Morris and Countrywide, and applicable regulations, provide for an "allowable" attorney fee for a full foreclosure proceeding."  Doc. 223, p. 6.  Plaintiff further contends that he "and other putative class members are third party beneficiaries of the 'allowable' limitation on attorney's fees imposed by regulation

and incorporated into contracts to which plaintiffs are third-party beneficiaries." Doc. 223. p. 6-7.

Under Louisiana law, "[a] contracting party may stipulate a benefit for a third person called a third party beneficiary." La. Civ. Code art. 1978. Because the Civil Code does not specify the analytical framework for determining when a contract contains a stipulation *pour autrui*, the requisite criteria have been jurisprudentially developed. *Williams v. Certain Underwriters at Lloyd's of London*, 2010 WL 4009818, *2 (5th Cir. October 13, 2010). Here, no analysis of the individual criteria is required. Plaintiff has not submitted into evidence a copy of the contract between Dean Morris and Countrywide, and therefore the Court is unable to determine whether that contract includes a stipulation *pour autrui* in favor of borrowers such as Mr. Battiste. Nor has the plaintiff cited the applicable regulation relied upon in asserting that there is a maximum "allowable" attorney's fee for a full foreclosure proceeding. Absent such evidence, plaintiff cannot raise a genuine issue of material fact on this claim for breach of contract.

Plaintiff also alleges that the Dean Morris defendants are laible "because they deprived Mr. Battiste, and other putative class members, of the right to reinstate - a right guaranteed under the terms of the mortgage contract." Doc. 223, p. 7. The Dean Morris defendants are entitled to summary judgment on this claim as well. Plaintiff did reinstate his loan in November 2002. With respect to the second foreclosure proceeding, plaintiff has not submitted any competent summary judgment evidence establishing that absent the alleged misrepresentations by Dean Morris in the December 22, 2003 reinstatement proposal that he had the financial resources to reinstate his loan. Absent such evidence, plaintiff cannot raise a genuine issue of material fact on his breach of contract claim that Dean Morris's alleged misrepresentations deprived him of his right to reinstate

27

his loan.

Accordingly,

      **IT IS ORDERED** that the motion is GRANTED insofar as it seeks dismissal of all of plaintiff's claims against Charles H. Hecker, Jr. and Candace A. Couteau;

      **IT IS FURTHER ORDERED** that the motion is GRANTED insofar as it seeks dismissal of plaintiff's claims for unjust enrichment, civil conspiracy, and breach of contract against defendants Dean Morris, L.L.P., George B. Dean, Jr., and John C. Morris, III;

      **IT IS FURTHER ORDERED** that the motion is GRANTED insofar as it seeks dismissal of plaintiff's claims for intentional misrepresentation and fraud related to the October 2, 2002 and December 22, 2003 reinstatement proposals against defendants Dean Morris, L.L.P., George B. Dean, Jr., and John C. Morris, III.;

      **IT IS FURTHER ORDERED** that the motion is DENIED insofar as it seeks dismissal of plaintiff's claims for intentional misrepresentation and  fraud related to the October 30, 2002 reinstatement proposal, and   plaintiff's claims for conversion  against defendants Dean Morris, L.L.P., George B. Dean, Jr., and John C. Morris, III.

      New Orleans, Louisiana, this 6th day of May, 2011.

                                 STANWOOD R. DUVAL, JR.
                           UNITED STATES DISTRICT JUDGE